IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12–cv–01921–PAB–KMT

DELMART E.J.M. VREELAND, II,

      Plaintiff,

v.

ROGER WERHOLTZ, Interim Executive Director, CDOC, and
SERGEANT GRIGGS, CDOC/BVCF Mailroom,

      Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**Magistrate Judge Kathleen M. Tafoya**

    This case involves claims that Defendants violated Plaintiff's civil rights. The matter comes before the court on the "Motion to Dismiss" filed by Defendants Suthers, Clements[1], and Griggs (Doc. No. 19 [Mot. Dismiss], filed October 22, 2012). Plaintiff filed his response on December 17, 2012 (Doc. No. 34 [Resp. Mot. Dismiss]), and Defendants filed their reply on January 18, 2013 (Doc. No. 42 [Reply Mot. Dismiss]).

    Also before the court is Plaintiff's "Motion for Leave to File an Amended Complaint" ("Motion to Amend") (Doc. No. 55 [Mot. Amend], filed March 25, 2013), to which Defendants filed a response on May 1, 2013 (Doc. No. 62 [Resp. Mot. Amend]), and Plaintiff filed a reply

---

[1]Since Defendants filed their Motion to Dismiss, Defendant Suthers has been dismissed from this case (*see* Doc. No. 63), and Roger Werholtz has been substituted as the defendant in place of Tom Clements, pursuant to Fed. R. Civ. P. 25(d) (*see* Doc. No. 65). Where Plaintiff refers to Defendant Clements in his Complaint, the court has substituted Defendant Werholtz.

on May 20, 2013 (Doc. No. 66 [Reply Mot. Amend]).  These motions are ripe for

recommendation and ruling.

## STATEMENT OF THE CASE

The following description is taken from Plaintiff's Complaint.  (Doc. No. 1 [Compl.],

filed July 23, 2012)  Plaintiff asserts jurisdiction under 42 U.S.C. § 1983.  (*Id.* at 3.)  Plaintiff is

an inmate at the Buena Vista Correctional Facility ("BVCF") in the Colorado Department of

Corrections ("CDOC").  (*Id.* at 2.)  Plaintiff alleges sometime in 2010, Defendant Griggs, a

mailroom employee, seized legal mail, opened it, read it, and allowed other staff members to

read it over the objection of Plaintiff.  (*Id.* at 4.)  Plaintiff also alleges his criminal trial court

record and transcripts were mailed to him, that the defendants told Plaintiff he could not have

access to the files, and that Plaintiff was given ten days to send the files out of the facility or the

files would be destroyed.  (*Id.* at 7.)

Plaintiff asserts eleven claims for relief.  In Claim One, Plaintiff alleges on June 25,

2012, Defendant Griggs received, confiscated, and rejected a package containing portions of his

criminal trial discovery sent to him by a private investigator hired by his criminal lawyer.  (*Id.* at

8.)  Plaintiff alleges he was denied the right to file a grievance "pursuant to CDOC rule."  (*Id.*)

In Claim Two, Plaintiff alleges he was denied the right to file an adequate petition for

Writ of Habeas Corpus under 28 U.S.C. § 2254 because, due to the confiscation of the two

packages, he was unable to raise all of his claims and point to the record in a proper fashion.  (*Id.*

at 10–11.)  In Claim Three, Plaintiff alleges he was denied meaningful access to the courts

because the defendants denied him access to the trial court record, discovery, and trial

transcripts.  (*Id.*. at 12.)  In Claim Four, Plaintiff alleges he was denied access to counsel under

the Sixth Amendment.  (*Id.* at 13.)  In Claim Five, Plaintiff alleges he was denied adequate post-

conviction review due to Defendants' denial of the mailed packages.  (*Id.* at 14.)  In Claims Six

and Seven, Plaintiff alleges Defendants denied him his equal protection rights by denying him

access to the mailed packages.  (*Id.* at 15.)  In Claim Eight, Plaintiff alleges he was denied timely

post-conviction review by Defendants' seizure of his criminal trial records.  (*Id.* at 16–17.)  In

Claim Nine, Plaintiff asserts the defendants violated his Fourth Amendment rights by illegally

searching and seizing the documents mailed to him by a private investigator.  (*Id.* at 17.)  In

Claim Ten, Plaintiff alleges Defendant Griggs violated his right to privileged communications

between Plaintiff and his legal team.  (*Id.* at 19.)  Finally, in Claim Eleven, Plaintiff alleges the

defendants, through their denying him access to his criminal trial record, have subjected him to

cruel and unusual punishment in violation of the Eighth Amendment.[2]  (*Id.* at 20.)

Plaintiff seeks punitive damages, nominal damages, and injunctive relief.  (*Id.* at 22.)

## LEGAL STANDARD

### *1.*   **Pro Se** *Plaintiff*

Plaintiff is proceeding *pro se*.  The court, therefore, "review[s] his pleadings and other

papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys."

---

[2]Much of Plaintiff's Complaint and proposed amended Complaint is devoted to complaining about the length of time spent in briefing his direct appeal before the Colorado Court of Appeals and the significant amount of time Plaintiff had to wait for the Colorado Court of Appeals to issue a decision on his direct appeal.  Plaintiff has not asserted any claims in that regard, however, and those issues are not properly before this Court.

*Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see also Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers"). However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991) (citations omitted). A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983); *see also Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (a court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues").

## 2.    *Lack of Subject Matter Jurisdiction*

Federal Rule of Civil Procedure 12(b)(1) empowers a court to dismiss a complaint for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case. Rather, it calls for a determination that the court lacks authority to adjudicate the matter, attacking the existence of jurisdiction rather than the allegations of the complaint. *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th

4

Cir. 1974).  A court lacking jurisdiction "must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *See Basso*, 495 F.2d at 909.  The dismissal is without prejudice.  *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1218 (10th Cir. 2006); *see also Frederiksen v. City of Lockport*, 384 F.3d 437, 438 (7th Cir. 2004) (noting that dismissals for lack of jurisdiction should be without prejudice because a dismissal with prejudice is a disposition on the merits which a court lacking jurisdiction may not render).

A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusionary allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971).  When considering a Rule 12(b)(1) motion, however, the Court may consider matters outside the pleadings without transforming the motion into one for summary judgment. *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995). Where a party challenges the facts upon which subject matter jurisdiction depends, a district court may not presume the truthfulness of the complaint's "factual allegations . . . [and] has wide discretion to allow affidavits, other documents, and [may even hold] a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." *Id.*

*3.*     ***Failure to State a Claim Upon Which Relief Can be Granted***

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6) (2007). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally

sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1198 (10th Cir. 1991). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The *Iqbal* evaluation requires two prongs of analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or merely conclusory. *Id.* at 1949–51. Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 1951. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 1950.

Notwithstanding, the court need not accept conclusory allegations without supporting factual averments. *Southern Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1940.

6

Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'  Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* at 1949 (citation omitted).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'"  *Iqbal*, 129 S. Ct. at 1949 (citation omitted).

**4.     *Amendment of Pleadings***

Under Rule 15(a), a court should allow a party to amend its pleadings "when justice so requires." Fed. R. Civ. P. 15(a).  The grant or denial of an opportunity to amend is within the discretion of the court, but "outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules."  *Foman v. Davis*, 371 U.S. 178, 182 (1962).  "Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment."  *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993).  Notably,

> The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits.

*Conley v. Gibson*, 355 U.S. 41, 48 (1957).

7

## ANALYSIS

### 1.      *Eleventh Amendment Immunity*

Defendants assert that the claims against them in their official capacities must be dismissed based on Eleventh Amendment immunity.[3]   (Mot. Dismiss at 4–5.)  The Eleventh Amendment to the United States Constitution states:   "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.  It has been interpreted to bar a suit by a citizen against the citizen's own state in federal court.  *Johns v. Stewart*, 57 F.3d 1544, 1552 (10th Cir. 1995).  Suits against state officials in their official capacity should be treated as suits against the state.  *Hafer v. Melo*, 502 U.S. 21, 25 (1991).  This is because a suit against a state official in his or her official capacity is a suit against the official's office and therefore is no different from a suit against the state itself.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).  The Eleventh Amendment thus shields state officials, acting in their official capacities, from claims for monetary relief.  *See Hill v. Kemp*, 478 F.3d 1236, 1255-56 (10th Cir. 2007).  Moreover, a § 1983 action may only be brought against a person.  *See* 42 U.S.C. § 1983.  Neither states nor state officers sued in their official capacity for monetary damages are persons within the meaning of § 1983.  *Will*, 491 U.S. at 70-71.

---

[3]The Complaint does not state whether the plaintiff is suing the defendants in their individual capacity, official capacity, or both.  However, in his response to the Motion to Dismiss, Plaintiff clarifies he is suing the defendants in both capacities.  (*See* Resp. Mot. Dismiss at 3.)

Plaintiff's claims for monetary relief against the defendants in their official capacities constitute claims against the Colorado Department of Corrections.  *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) ("a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office").  Therefore, Plaintiff's official-capacity claims for monetary relief against the defendants are barred by the Eleventh Amendment and should be dismissed for lack of subject matter jurisdiction.  *See id.*; *Hunt v. Bennett*, 17 F.3d 1263, 1267 (10th Cir. 1994).

To the extent Plaintiff wishes to amend his complaint and sue the defendants for monetary damages in their official capacities, his claims also would be barred by the Eleventh Amendment.  Therefore, any proposed amendments to assert claims for monetary damages against the defendants in their official capacities are futile, and the Motion to Amend to add any such claims properly is denied.[4]

## 2.    *Personal Participation by Defendant Werholtz*

"Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation."  *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997) (citing *Grimsley v. MacKay*, 93 F.3d 676, 679 (10th Cir. 1996)); *Bennett v. Passic*, 545 F.2d 1260, 1262–63 (10th Cir.1976) ("Personal participation is an essential allegation in a § 1983 claim." (citations omitted)).  Defendants are personally involved in an alleged constitutional violation only if there is an "affirmative link" between their conduct and the alleged violation. *Stidham v.*

---

[4]In his reply to the Motion to Amend, Plaintiff states that the defendants are sued in their official capacity for only non-monetary relief.  (Reply Mot. Amend at 3.)

*Peace Officer Stds. & Training*, 265 F.3d 1144, 1156 (10th Cir. 2001).  Because of the

"affirmative link" requirement, a defendant in a position of general supervisory authority cannot

be held vicariously liable for alleged constitutional violations committed by his subordinates.

 *Serna v. Colo. Dep't of Corrs.*, 455 F.3d 1146, 1151 (10th Cir. 2006) ("Supervisors are only

liable under § 1983 for their own culpable involvement in the violation of a person's

constitutional rights."); *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996) ("[S]upervisor

status by itself is insufficient to support liability." (citing *Rizzo v. Goode*, 423 U.S. 362, 376

(1976))); *Ruark v. Solano*, 928 F.2d 947, 950 (10th Cir. 1991) (" '[T]here is no concept of strict

supervisor liability under section 1983.' " (quoting *Harris v. Greer*, 750 F.2d 617, 618 (7th

Cir.1984))); *McKee v. Heggy*, 703 F.2d 479, 483 (10th Cir. 1983) ("A defendant cannot be liable

under a respondeat superior theory in a section 1983 case." (citing *McClelland v. Facteau*, 610

F.2d 693 (10th Cir.1979))).

Courts have explained that a defendant in a supervisory position may be personally

involved in an alleged constitutional violation committed by his subordinates in two situations.

First, the supervisor may be personally involved when he personally directs his subordinates to

take the action that resulted in the alleged constitutional violation.  *Woodward v. City of*

*Worland*, 977 F.2d 1392, 1400 (10th Cir. 1992).  Second, the supervisor may be personally

involved when he has actual knowledge that his subordinates are committing the alleged

constitutional violation and he acquiesces in its commission.  *Id.* (citing *Andrews v. City of*

*Philadelphia*, 895 F.2d 1469, 1478 (3d Cir. 1990) (stating that supervisor liability requires

"allegations of personal direction or of actual knowledge and acquiescence")); *see also id.* at

10

1399 n.11 (To show an affirmative link between the defendant supervisor's conduct and unconstitutional behavior by his subordinates, a plaintiff must establish "an intentional, conscious, and deliberate act by the defendant participating in, or knowingly acquiescing in, the unconstitutional behavior.").

Here, Plaintiff has failed to allege any specific conduct by Defendant Werholtz.  Plaintiff alleges Defendant Werholtz violated his constitutional rights because Defendant Griggs confiscated Plaintiff's mail with "alleged permission of [Defendant Werholtz]."  (Compl. at 7.) Plaintiff alleges he was "denied the right to issue a grievance and or an appeal" because of the "CDOC rule created by [Defendant Werholtz]."  (*Id.* at 8.)  Plaintiff asserts Defendant Werholtz "allowed" Defendant Griggs to seize his mail.  (*Id.*. at 16.)  Even liberally construing the allegations in Plaintiff's Complaint, Plaintiff has failed to allege that Defendant Werholtz either personally directed his subordinates to take or to refrain from the action that resulted in the alleged constitutional violations or that Defendant Werholtz had actual knowledge that his subordinates were committing an alleged constitutional violation.  *See Woodward*, 977 F.2d at 1400.  Without such allegations, Plaintiff's assertions are insufficient to state a claim.  Therefore, Plaintiff's claims against Defendant Werholtz, with the exception of the claims against him in his official capacity for non-monetary relief, properly are dismissed for failure to state a claim upon which relief can be granted.

In his proposed amended complaint, Plaintiff asserts that Defendant Werholtz "was acting as head of a state agency when he created and enforced policies that violated the federal rights of herein plaintiff and ignored plaintiff's appeals and grievances and letters sent to this

11

defendant," (Doc. No. 55 at 2, ¶ 2) and that he "ordered the enforcement" of all of the CDOC's

Administrative Regulations (*see id.* at 13, 15, 18–19, 32, 41.)  The allegations show only a

possible indirect involvement of the state prison administration in Plaintiff's personal situation

and fail to allege the necessary personal participation required for individual liability under §

1983.  As such, Plaintiff's Motion to Amend in this regard must be denied as futile.

### 3.    *Claim for Deprivation of Property*

Plaintiff alleges Defendant Griggs confiscated his legal mail in violation of his due

process rights.  (Compl. at 8–9.)  Defendants argue that, to the extent Plaintiff asserts a due

process claim for the rejection and confiscation of his mail, such a claim cannot be brought under

§ 1983.  (Mot. Dismiss at 6–8.)

It is well established that "[t]he intentional deprivation of property is not a fourteenth

amendment violation if adequate state post-deprivation remedies are available."  *Durre v.*

*Dempsey*, 869 F.2d 543, 547 (10th Cir. 1989).  *See Bridgeforth v. Ramsey*, No. 99-6179, 1999

WL 992978, at *1 (10th Cir. Nov.2, 1999) ("Even if the seizure of a prisoner's property is

improper, an intentional deprivation of property does not give rise to a Fourteenth Amendment

due process claim if adequate state post-deprivation remedies are available.") (citing *Hudson v.*

*Palmer*, 468 U.S. 517, 533; *Smith v. Maschner*, 899 F.2d 940, 943 (10th Cir. 1990)).  An action

in state court invoking the "willful and wanton" act exception to the Colorado Governmental

Immunity Act pursuant to Colo. Rev. Stat. § 24-10-118(2) is an adequate state post-deprivation

remedy.  *See Ali v. Reeves*, No. 06–1317, 232 F. App'x 777, 779 (10th Cir. 2007).  The Tenth

Circuit requires a plaintiff to plead that these remedies are inadequate.  *Montana v. Hargett*, 84

F. App'x 15, 17 (10th Cir. 2003) (citing *Durre*, 869 F.2d at 548).  If such a remedy exists, it has

a "presumption of adequate due process" that "may stave off a facial attack." *Freeman v. Dep't

of Corrs.*, 949 F.2d 360, 362 (10th Cir. 1991).  In order to overcome this presumption of

adequacy, the complaint must state "specific facts" showing that the remedy was "unresponsive

or inadequate." *Id.*  Here, Plaintiff does not allege any facts in his Complaint regarding the

adequacy of his state court remedy.  Accordingly, the remedy for his claim asserting a

deprivation of property is pursuant to Colo. Rev. Stat. § 24-10-118 of the Colorado

Governmental Immunity Act, not under § 1983.[5]  Therefore, to the extent the plaintiff is

asserting a deprivation of property claim, the claim properly is dismissed with prejudice.

     In his proposed amended complaint, Plaintiff continues to assert that the defendants

violated his due process rights.  However, any due process claims asserted in Plaintiff's proposed

amended complaint fail for the same reasons this court has recommended dismissal of the due

process claims in his operative Complaint, as explained *supra*, because Colorado law provides

an adequate remedy.  *See Boles*, 479 F. App'x at 841–42.

---

[5]The defendants also assert that the prison grievance system under Administrative Regulation 850-04 is an adequate post-deprivation remedy.  (Mot. Dismiss at 8.)  However, though Plaintiff concedes he did not exhaust the prison administrative remedies, he states he was denied a grievance form.  (*See* Compl. at 21.)  Thus, under § 12(b)(6), the court cannot recommend dismissal for Plaintiff's failure to exhaust his administrative remedies and cannot find that the prison grievance procedure was adequate.  Nevertheless, because Colo. Rev. Stat. § 118 provides Plaintiff an avenue for redress of his deprivation of property claim, it is properly dismissed on that basis.  *See Boles v. Newth*, 479 F. App'x 836, 841–42 (10th Cir. 2012) (finding even where prison grievance system was not adequate remedy, deprivation of property claim dismissed where state law provided an adequate remedy).

**4.      Claims for Denial of Access to Courts**

In Claim Two, Plaintiff alleges he was denied the right to file an adequate petition for

Writ of Habeas Corpus under 28 U.S.C. § 2254 because, due to the confiscation of the two

packages, he was unable to raise all of his claims and point to the state court record in a proper

fashion.[6]  (Compl. at 10–11.)  In Claim Three, Plaintiff alleges he was denied meaningful access

to the courts because the defendants denied him access to the trial court record, discovery, and

trial transcripts.  (*Id.*. at 12.)  In Claim Five, Plaintiff alleges he was denied adequate post-

conviction review due to Defendants' denial of the mailed package.  (*Id.* at 14.)  In Claim Eight,

Plaintiff alleges he was denied timely post-conviction review by Defendants' seizure of his

criminal trial records.  (*Id.* at 16–17.)

It is well-recognized that prison inmates "have a constitutional right to 'adequate,

effective, and meaningful' access to the courts and that the states have 'affirmative obligations'

to assure all inmates such access."  *Ramos v. Lamm*, 639 F.2d 559, 583 (10th Cir. 1980) (quoting

*Bounds v. Smith*, 430 U.S. 817, 822 (1977)).  In *Bounds*, the Supreme Court clarified this

obligation by stating, "the fundamental constitutional right of access to the courts requires prison

authorities to assist inmates in the preparation and filing of meaningful legal papers by providing

---

[6]Though Plaintiff characterizes Claim Two as a due process claim, the claim is based on the same allegations that give rise to his claims for denial of access to the courts, and the underlying allegations are properly analyzed under the relevant standards for a First Amendment claim, rather than standards that govern a claim for substantive or procedural due process.  *See Valot v. Southeast Local School Dist. Bd. of Educ.*, 107 F.3d 1220, 1226 (6th Cir. 1997) (noting that right of access to the courts is sometimes construed as stemming from the Due Process clause of the Fourteenth Amendment, and that where courts instead find a violation of the First Amendment Petition Clause, they decline to consider duplicative claims under the Fourteenth Amendment).

prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Id.* at 828 (footnote omitted).

To successfully assert a claim for denial of access to the courts, a prisoner must show (1) the inadequacy of the library or legal assistance furnished, and (2) an "actual injury" resulting from the inadequate facilities or assistance. *Lewis v. Casey*, 518 U.S. 343, 349 (1996).  To satisfy the "actual injury" requirement a plaintiff must show "that the denial of legal resources hindered the prisoner's efforts to pursue a nonfrivolous claim." *Penrod v. Zavaras*, 94 F.3d 1399, 1403 (10th Cir. 1996).  Finally, the non-frivolous claims involved must be "habeas corpus or civil rights actions regarding current confinement." *Carper v. Deland*, 54 F.3d 613, 616 (10th Cir. 1995).

Defendants argue that the Plaintiff's allegations are too speculative and conclusory to state a plausible claim that he was impeded in his effort to pursue a nonfrivolous claim because he has failed to allege that he missed any court deadlines or that any lawsuits were dismissed as a result of Defendant Griggs' alleged conduct.  (Mot. Dismiss at 10.)  The defendants are correct that Plaintiff, in fact, filed a 285-page Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 in this Court on August 3, 2012.  (*See* Civil Action No. 12-cv-02039-LTB, Doc.

No. 1.[7])  Thus, to the extent Plaintiff claims he was unable to file an application for writ of

habeas corpus, Plaintiff's claim is belied by the Court's records.

Defendants also argue that, to the extent Plaintiff anticipates losing his Application as a

result Defendant Griggs' alleged conduct in confiscating Plaintiff's legal mail, Plaintiff's claims

are speculative and not ripe for review because the Application remains unresolved.  (Mot.

Dismiss at 10.)  However, since Defendants filed their Motion to Dismiss, Plaintiff's Application

has been dismissed, and judgment has entered.  (*See* Civil Action No. 12-cv-02039-LTB, Doc.

Nos. 32 and 33.)  Therefore, this argument fails.  Nevertheless, Plaintiff's claims for denial of

access to the court fail for a different reason.

In the Order dismissing Plaintiff's Application for a Writ of Habeas Corpus Pursuant to

28 U.S.C. § 2254, Senior Judge Lewis T. Babcock determined Plaintiff had failed to exhaust the

state court remedies, and the action was subject to dismissal as a mixed petition.[8]  (*See* Civil

---

[7]While ordinarily a motion to dismiss must be converted to a motion for summary judgment when the court considers matters outside the complaint, *see* Fed. R. Civ. P. 12(d), matters that are judicially noticeable do not have that effect, *see Duprey v. Twelfth Judicial Dist. Court*, 760 F. Supp. 2d 1180, 1192–93 (D.N.M. 2009) (citing *Grynberg v. Koch Gateway Pipeline Co.*, 390 F.3d 1276, 1279 n.1 (10th Cir.2004)).  When considering a motion to dismiss, "the court is permitted to take judicial notice of its own files and records, as well as facts which are a matter of public record." *Van Woudenberg v. Gibson*, 211 F.3d 560, 568 (10th Cir. 2000), *abrogated on other grounds by McGregor v. Gibson*, 248 F.3d 946, 955 (10th Cir. 2001).

[8]Even if state remedies properly have been exhausted as to one or more of the claims presented, a habeas corpus application is subject to dismissal as a mixed petition unless state court remedies have been exhausted for all of the claims raised.  *See Rose v. Lundy*, 455 U.S. 509, 522 (1982); *Harris v. Champion*, 48 F.3d 1127, 1133 (10th Cir. 1995).  The plaintiff stated in his Application that the Colorado Court of Appeals allowed him to present only five of the twenty-six claims that he desired to present in his direct appeal.  (*See* Civil Action No. 12-cv-02039-LTB, Doc. No. 32 at 9.)  Additionally, Plaintiff identified thirty-one claims in his Application, but claimed there are over eighty claims to be addressed. (*See id.*)

16

Action No. 12-cv-02039-LTB, Doc. Nos. 32 at 9, 10.)  Therefore, Plaintiff's Application did not

fail because of any denial of legal resources that hindered Plaintiff's efforts to pursue a

nonfrivolous claim, *see Penrod*, 94 F.3d at 1403.  Rather, Plaintiff's Application was dismissed

because Plaintiff failed to exhaust his state court remedies, and Senior Judge Babcock dismissed

the action as a mixed petition.

Therefore, Plaintiff has failed to satisfy the "actual injury" requirement to state claim for

denial of access to courts, s*ee Lewis*, 518 U.S. at 349, and this claim properly is dismissed.

In his proposed amended complaint, Plaintiff alleges his appeal in the Colorado Court of

Appeals has been denied, and the defendants' failure to allow him access to the legal materials

sent to him by the private investigator is preventing him from filing post-conviction appeals.

(*See* Doc. No. 55-1 at 14, 26.)  At the pleading stage, the allegation is sufficient to state a claim

for denial of access to the courts because he sufficiently alleges that the denial of legal materials

is hindering his efforts to pursue a nonfrivolous claim.  *Penrod*, 94 F.3d 1403.  Thus, Plaintiff's

Motion to Amend should be granted with respect to this claim.[9]

---

[9]It appears Plaintiff wishes to amend his Complaint to assert allegations that was unable to pursue appeals on criminal cases in Florida and Michigan due to the defendants' alleged denial of his mail. (*See* Doc. No. 55-1 at 22–24.)  However, the documents attached to Plaintiff's Amended Complaint show that the Michigan Court rejected a submission as defective and dismissed his appeal for lack of jurisdiction in October 2011, before the alleged events in this case.  (*See* Doc. No. 55-1 at 169–70.)  Though unclear, it appears Plaintiff's allegations in this regard relate to the rejection of mail sent to him in August 2010.  Plaintiff's claims regarding the alleged rejection of his mail in August 2010 are time-barred, as explained *supra*.  Moreover, the Florida Court rejected Plaintiff's motion to reopen his criminal case without prejudice because it was time-barred, not for a failure to provide sufficient documents.  (*See* Doc. No. 188.)  Therefore, the alleged denial of legal materials did not "hinder[ ]the prisoner's efforts to pursue a nonfrivolous claim." *Penrod*, 94 F.3d at 1403.  Finally, the claims in Michigan and Florida are not "habeas corpus or civil rights actions

**5.**     *Claim for Denial of Access to Counsel*

In Claim Four, Plaintiff alleges he was denied access to counsel under the Sixth

Amendment.  (*Id.* at 13.)  Plaintiff alleges because the defendants denied him access to the

criminal trial materials, he was unable to communicate with counsel "in all facets of post

conviction process[es] both State and federal."  (*Id.*)

The Sixth Amendment provides certain rights "[i]n all criminal prosecutions."  U.S.

CONST. Amend. VI.  However, the Sixth Amendment right to counsel does not apply to civil

proceedings such as habeas corpus in which a petitioner is collaterally attacking his conviction.

*Chaney v. McCotter*, 5 F.3d 545 (10th Cir. 1993) (citing *Coleman v. Thompson*, 501 U.S. 722,

752–53 (1991)).  Therefore, to the extent Plaintiff alleges he did not have access to counsel to

pursue his federal habeas corpus action, the claim properly is dismissed.

In addition, the Sixth Amendment right to counsel extends to a direct appeal.  *Douglas v.

California*, 372 U.S. 353, 357–58.  Access to counsel is another means to ensure access to the

courts.  *See Maschner*, 899 F.2d at 944 (citing *Evans v. Moseley*, 455 F.2d 1084, 1087 (10th

Cir.1972) (prisoner's right to correspond with attorney does not extend to correspondence "on

any subject," but only to issues implicating access to courts)).  However, Plaintiff concedes he,

through counsel, filed a Notice of Appeal on December 1, 2008 (Compl. at 1) and an opening

brief on April 14, 2011 (*id.* at 6), over a year before Plaintiff filed this civil action.  In his

Complaint, Plaintiff does not allege Defendant Griggs' alleged confiscation of his mail has

---

regarding **current** confinement" within the CDOC.  *Carper*, 54 F.3d at 616.  Thus, to the extent
Plaintiff seeks to amend his complaint in this regard, his amendments must fail.

interfered with his right to counsel in his criminal matter.  Rather, Plaintiff complains that the mail was "and is needed for the purpose of preparing and filing a proper meaningful petition for Writ of Habeas Corpus . . . ."  (*Id.* at 7.)

In his proposed amended complaint, Plaintiff alleges the defendants, by confiscating his mail, interfered with his ability to consult with his attorney regarding his direct criminal appeal.  (*See* Doc. No. 55-1 at 27–28.)  Specifically, Plaintiff alleges he was

> unable to answer many questions for counsel.  In order to properly prepare for state direct appellate briefs, plaintiff had to pay to have counsel travel to the prison so the information could be reviewed and the questions answered.  Plaintiff should have been able to simply read the letters and legal documents and then call and or mail a letter to counsel addressing the issues.

(*Id.* at 28.)  Meaningful access to an attorney for a prisoner's direct appeal of his criminal conviction includes an inmate's right privately to discuss his case with counsel.  *See Geder v. United States*, 425 U.S. 80 (1976).  In his proposed amended complaint, Plaintiff concedes that, other than the two instances in which he alleges his mail was confiscated, he had access to counsel and has been able to discuss his appeal privately with counsel.

Plaintiff appears to allege that the "actual injury" caused to him is the $4,000 he allegedly had to pay counsel to travel to the prison.  However, the consequences of failure to allow access to the courts as contemplated by the *Lewis* Court included negative consequences such as the dismissal of a complaint.  *Lewis*, 518 U.S. at 351.  Plaintiff fails to allege that his direct appeal was adversely affected by the alleged confiscation of his mail on two occasions.  Therefore, even if an alleged deprivation did occur in terms of denial of access, Plaintiff has failed to meet the

standard under *Lewis* in demonstrating actual hindrance of the pursuit of his legal claims, and his proposed amendments to his access to counsel claim must be denied.

**6.      *Equal Protection Claims***

In Claims Six and Seven, Plaintiff alleges Defendants denied him his equal protection rights by denying him access to his confiscated mail.  (*Id.* at 15.)  Specifically, Plaintiff asserts that "[e]very criminal defendant in the United States of America" has a right to appeal his case in state court and then to pursue federal post-conviction remedies, but that the defendants have denied him these rights.  (*Id.*)  Plaintiff also asserts that "[a]ll criminal defendants in the State of Colorado [D]epartment of Corrections have a right to copies of trial court records, discoveries and trial transcripts," but he has been denied this right.  (*Id.*)

The Equal Protection Clause "requires the government to treat similarly situated people alike."  *Barney v. Pulsipher*, 143 F.3d 1299, 1312 (10th Cir. 1998) (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)).  Thus, to assert a viable equal protection claim, a plaintiff must first make a threshold showing that he was treated differently from others similarly-situated.  *Id.*  Plaintiff has not made this showing.  Plaintiff merely states he "can supply a list of 50 names at minimum of inmates who currently have possess[ion] of their court files."  (Compl. at 15.)  Plaintiff's equal protection claims are entirely conclusory and without factual support.  The broad reading of a *pro se* complaint "does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based."  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  The lack of sufficient and supported factual allegations is fatal to Plaintiff's equal protection claims.  *See Northington v. Jackson*, 973 F.2d

20

1518, 1520-21 (10th Cir.1992) (finding court should dismiss claims supported only by vague and conclusory allegations).  Thus, they properly are dismissed.

In his proposed amended complaint, Plaintiff alleges approximately fifty percent of the "800 or so inmates" housed in the CDOC "are [c]urrently litigating pro se appeals and or post conviction motions, petitions and or applications, state and federal."  (Doc. No. 55-1 at 31.) Plaintiff alleges the "defendants have allowed these other inmates who are situate[d] exactly as plaintiff, to have their trial court transcripts, discovery, court files and witness lists."  (*Id.* at 33.) Again, however, Plaintiff has failed to allege *how* the other 400 inmates are similarly situated to him.  Plaintiff has failed to cure the deficiencies in his original Complaint, and his equal protection claim in his proposed amended complaint is subject to dismissal as futile; therefore, the amendment properly is denied.

**7.      *Claims Regarding Inspection, Confiscation, and/or Destruction of Mail***

In Claim Nine, Plaintiff asserts the defendants violated his Fourth Amendment rights by illegally searching and seizing the documents mailed to him by a private investigator.  (*Id.* at 17.)

**a.      *Fourth Amendment and Expectation of Privacy***

The Fourth Amendment applies when a plaintiff can claim a justifiable, reasonable, or legitimate expectation of privacy that has been invaded by government action.  *Smith v. Maryland*, 442 U.S. 735, 740 (1979); *see also Katz v. United States*, 389 U.S. 347 (1967). Prisoners have no legitimate expectation of privacy in non-privileged incoming mail if prison regulations provide that mail may be inspected.  *See United States v. Gordon*, 168 F.3d 1222, 1228 (10th Cir. 1999).

The CDOC regulations provide that mail to and from certain persons and organizations, including an offender's counsel, may be considered restricted mail that is inspected only for contraband in the presence of the prisoner.  (*See* CDOC Administrative Regulation ("AR") 300-38, § IV.B.1.g.)  To be considered confidential contact from an attorney, the incoming mailing envelope must include the attorney's first and last name, the attorney's registration number, the attorney's complete business address, and must be clearly marked "PRIVILEGED" or "CONFIDENTIAL."  (*See id.*, § IV.B.4.[10])  All other incoming mail is considered non-restricted and may be read for content.  (*Id.*,§ IV.C.)

In his Complaint, Plaintiff concedes that package in question was "sent to the Plaintiff by a *private investigation firm*" (Compl. at 8 [emphasis added]), and not his attorney or any other person or organization to whom restricted inspection mail applies.  (*See* AR  300-38, § IV.B.1.)  Moreover, Plaintiff fails to allege that the package was labeled according to CDOC policy.  The Fourth Amendment does not generally protect an inmate from the mere review of his mail. *United States v. Gordon*, 168 F.3d 1222, 1228 (10th Cir. 1999) (noting that there can be no reasonable expectation of privacy in prisoner's mail and the monitoring of such "is essentially an administrative matter in which the courts will not intervene") (citation omitted)).  Prison officials may open and inspect non-legal mail in the interest of jail security.  *See Wolff v. McDonnell*, 418 U.S. 539, 576-577 (1974).  Thus, to the extent Plaintiff's Fourth Amendment claim is based on

---

[10]A court may also take judicial notice of agency rules and regulations without converting the motion to dismiss to one for summary judgment. *Baxter v. Samples*, No. 08-cv-00620-CBS-KMT, 2009 WL 2242252, at *8 (D. Colo., July 22, 2009).

the fact that Defendant Griggs allegedly inspected the materials contained in the package, the claim fails. *See Gordon*, 168 F.3d at 1228.

>    **b.**        ***First Amendment Right to Receive Mail***

Though Plaintiff characterizes the confiscation of his mail as a Fourth Amendment seizure, the First Amendment protects a prisoner's right to receive mail. *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989). Prison officials may regulate that right, however, as long as the regulation is "reasonably related to legitimate penological interests." *Id.* at 409 (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)). To adequately plead a claim that prison officials violated an inmate's First Amendment rights by mishandling mail, the inmate must allege facts showing that: (I) his mail was mishandled; (ii) that the particular named defendant was responsible for that mishandling; (iii) that the mishandling was purposeful; and (iv) there is a plausible inference to be drawn that the basis for that mishandling was not reasonably related to a legitimate penological interest. *Gee v. Pacheco*, 627 F.3d 1178, 1187–88 (10th Cir. 2010).; *Simkins v. Bruce*, 406 F.3d 1239, 1242 (10th Cir. 2005) (negligent mishandling of mail does not give rise to constitutional liability).

Plaintiff alleges that Defendant Griggs advised Plaintiff that the package was confiscated "based upon an allegation that the transcripts had the names and addresses of witnesses and or alleged victims all through the pages." (Compl. at 5.) Though it is clear Plaintiff disagrees with the decision to confiscate his mail based on this reason, Plaintiff has failed to adequately allege how his mail was purposefully mishandled in a manner not reasonably related to a legitimate penological interest. There are no allegations showing an improper motive on the part of

23

Defendant Griggs.[11]  Finally, Plaintiff concedes in his Complaint that he was informed he "could

not have access to the files and that Plaintiff has exactly 10 days from 6/25/2012 to send the files out

of the facility or the files would be destroyed."  (Compl. at 7.)  The Complaint is devoid of any

allegation that Plaintiff was prevented from sending the materials out of the facility.  Therefore,

Plaintiff has failed to state a First Amendment Claim for the confiscation and/or destruction of

his mail.  *See Davis v. Arkansas Valley Corr. Facility*, 99. F. App'x 838, 842 (10th Cir. 2004)

(finding no constitutional violation where inmate was informed he could preserve the confiscated

materials by sending them out of the facility or have them destroyed and finding inmate acceded

to their destruction).

### c.        Proposed Amendments to Fourth and First Amendment Claims

In Plaintiff's proposed amended complaint, he clarifies the confiscated mail "was clearly

addressed from Elite Protection & Investigation."  (Doc. No. 55-1 at 8.)  Again, Plaintiff fails to

allege that the package was labeled according to CDOC policy; therefore, there is no allegation

the mail should have been considered restricted mail.  (*See* A.R. 300-38, § IV.B.1.g; § IV.B.4; §

IV.C.)  Thus, Plaintiff had no reasonable expectation of privacy in that package.  *See Gordon*,

168 F.3d at 1228.  In his proposed amended complaint, Plaintiff again has failed to allege how

his mail was purposefully mishandled in a manner not reasonably related to a legitimate

---

[11]To the contrary, Plaintiff alleges in his proposed amended complaint that the Publication Review Committee that later reviewed the confiscated mail agreed with Defendant Griggs that "all of the legal materials are censored, plaintiff may not have any of it for any reason as it posed a threat to the safety and security of the offender population or DOC staff, or contract worker by advocating facility disruption or non-compliance with prison rules."  (Doc. No. 55-1 at 12.)

penological interest or an improper motive on the part of Defendant Griggs.  Plaintiff's proposed amendment to this claim, therefore, should be denied.[12]

In Plaintiff's proposed amended complaint, he also seeks to add a Twelfth Claim asserting First Amendment violations regarding a package sent to him by his mother in August 2012.  (*Id.*)  Plaintiff claims the "package was a full and complete set of trial court transcripts.  This package was delivered and simply vanished."  (*Id.* at 14.)  However, Plaintiff fails to allege that any particular named defendant was responsible for the mishandling of the package or that the mishandling was purposeful.  *Gee*, 627 F.3d at 1187–88.  Thus, Plaintiff's amendment in this regard would be subject to dismissal for failure to state a claim and, therefore,  is futile, and the motion to amend in this regard should be denied.

**8.**      ***Claim for Violation of Attorney-Client Privilege***

In Claim Ten, Plaintiff alleges Defendant Griggs violated his right to privileged communications between Plaintiff and his legal team.  (Compl. at 19.)  The attorney-client privilege protects " 'confidential communications by a client to an attorney made in order to obtain legal assistance' from the attorney in his capacity as a legal advisor."  *In re Grand Jury Subpoena Duces Tecum Issued on June 9, 1982*, 697 F.2d 277, 278 (10th Cir. 1983) (quoting *Fisher v. United States*, 425 U.S. 391, 403 (1976)).  "[T]he mere fact that an attorney was

---

[12]In Plaintiff's proposed amended complaint, he also seeks to Plaintiff also seeks to add a Twelfth Claim asserting First Amendment violations regarding the mail sent to him by his counsel's investigator on June 20, 2012.  (Doc. No. 55-1 at 40.)  The amendment sought by Plaintiff is properly denied as set forth in this section.  Plaintiff also seeks to add a First Amendment claim regarding the mail sent to him by his counsel on August 5, 2010.  (*Id.*)  That claim is time barred, as explained *infra*.

involved in a communication does not automatically render the communication subject to the attorney-client privilege," *Motley v. Marathon Oil Co.*, 71 F.3d 1547, 1550–51 (10th Cir. 1995); rather, the "communication between a lawyer and client must relate to legal advice or strategy sought by the client," *United States v. Johnston*, 146 F.3d 785, 794 (10th Cir. 1998).

Although this description of the attorney-client privilege suggests the privilege only applies one way, operating to protect the client's communications to a lawyer, it is generally also recognized that "the privilege will protect at least those attorney to client communications which would have a tendency to reveal the confidences of the client." KENNETH S. BROWN, McCORMICK ON EVIDENCE § 89 (6th ed.2006); *see also United States v. Defazio*, 899 F.2d 626, 635 (7th Cir. 1990) ("Communications from attorney to client are privileged only if they constitute legal advice, or tend directly or indirectly to reveal the substance of a client confidence.").

Here, Plaintiff fails to allege the package confiscated contained "confidential communications by a client to an attorney made in order to obtain legal assistance," *In re Grand Jury Subpoena*, 697 F.2d at 278, or that it "relate[d] to legal advice or strategy sought by the client," *Johnston*, 146 F.3d at 794. Rather, Plaintiff alleges the package contained public court records, including a trial court record, discovery, and trial transcripts. (Compl. at 18.) Therefore, Plaintiff's claim that Defendant Griggs violated the attorney-client privilege properly is dismissed.[13]

---

[13]In his proposed amended complaint, Plaintiff also alleges the defendants violated the attorney-client privilege regarding the a package sent to Plaintiff by his attorney on August 5, 2010.

9.      *Eighth Amendment Claim*

Finally, in Claim Eleven, Plaintiff alleges the defendants, through their denying him

access to his criminal trial record, have subjected him to cruel and unusual punishment in

violation of the Eighth Amendment.  (Compl. at 20.)

A prisoner claiming that he has been subjected to cruel and unusual punishment based on

the conditions of his confinement must demonstrate, in part, that the infringement was

sufficiently serious.  *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  "[E]xtreme deprivations

are required to make out a conditions-of-confinement claim."  *Hudson v. McMillian*, 503 U.S. 1,

9 (1992).  The conditions must deprive a prisoner of the " 'minimal civilized measure of life's

necessities.' "  *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (quoting *Rhodes v. Chapman*, 452

U.S. 337, 347 (1981)).  In the absence "of a specific deprivation of a human need, an Eighth

Amendment claim based on prison conditions must fail."  *Shifrin v. Fields*, 39 F.3d 1112, 1114

(10th Cir. 1994) (internal quotation marks omitted).  The core areas entitled to protection under

the Eighth Amendment include food, shelter, sanitation, personal safety, medical care, and

adequate clothing.  *See Clemmons v. Bohannon*, 956 F.2d 1523, 1527 (10th Cir. 1992).

Plaintiff disagrees with the confiscation of his mail.  However, Plaintiff does not allege

he is deprived of the minimal civilized measure of life's necessities.  As the Supreme Court of

the United States has observed, "[t]o the extent that [prison] conditions are restrictive and even

harsh, they are part of the penalty that criminal offenders pay for their offense against society."

---

(Doc. No. 55-1.)  The court need not address this claim because, as explained *infra*, it is time barred.

*Rhodes v. Chapman*, 452 U.S. 337, 346–47 (1981).  Plaintiff's Eighth Amendment claim of cruel and unusual punishment is without merit and properly is dismissed.

**10.      *Punitive Damages Claim***

Defendants move to dismiss Plaintiff's claim for punitive damages.  A jury may be permitted to assess punitive damages in a § 1983 action when the defendant's conduct involves reckless or callous indifference to the plaintiff's federally protected rights, as well as when it is motivated by evil motive or intent.  *Smith v. Wade*, 461 U.S. 30, 56 (1983).  "The focus is on the character of the tortfeasor's conduct—whether it is of the sort that calls for deterrence and punishment over and above that provided by compensatory awards."  *Smith*, 461 U.S. at 54.  Plaintiff's Complaint fails to allege the mental state of Defendant Griggs at the time of his allegedly unlawful conduct.  To the contrary, Plaintiff states Defendant Griggs had a valid reason, though Plaintiff disagrees with it, for confiscating Plaintiff's mail.  Accordingly, Plaintiff has not stated a claim for punitive damages under 42 U.S.C. § 1983, and it properly is dismissed.

**11.      *Qualified Immunity***

Defendants argue they are entitled to qualified immunity in their individual capacities because Plaintiff fails to state a claim.  (Mot. at 18–20.)  Whether a defendant is entitled to qualified immunity is a legal question.  *Wilder v. Turner*, 490 F.3d 810, 813 (10th Cir. 2007).

> Resolution of a dispositive motion based on qualified immunity involves a two-pronged inquiry.  First, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right.  Second, . . . the court must decide whether the right at issue was clearly established at the time of the defendant's alleged misconduct.  With regard to this second [prong], the relevant, dispositive inquiry in determining whether a right is clearly established

28

> is whether it would be clear to a reasonable officer that his conduct was unlawful
> under the circumstances presented.

*Herrera v. City of Albuquerque*, 589 F.3d 1064, 1070 (10th Cir. 2009) (internal quotation marks

and citations omitted).  "A reviewing court may exercise [its] sound discretion in deciding which

of the two prongs of the qualified immunity analysis should be addressed first in light of the

circumstances in the particular case at hand."  *Id.*

Because Plaintiff has failed to state claims for any constitutional violations, the

defendants are entitled to qualified immunity in their individual capacities.

**12.     *Additional Amendments in Motion to Amend Complaint***

In addition to the amendments discussed *supra*, Plaintiff seeks to amend his complaint to

add additional defendants.[14]  (*See* Mot. Amend.)  Plaintiff also seeks to add compensatory

damages to the relief he seeks.  (*See* Doc. No. 55-1 at 43, ¶ 4.)

**a.     *Amendments to Add Anthony DeCesaro as a Defendant***

Plaintiff seeks to add Anthony DeCesaro as a defendant because "he received the third

step grievances of plaintiff and intentionally denied the grievances."  (Doc. No. 55-1 at 3, ¶ 5;

*see also id. at* 6, 11, 28.)  That allegation is not sufficient to hold Mr. DeCesaro liable under §

1983.  "[A] denial of a grievance, by itself without any connection to the violation of

constitutional rights alleged by plaintiff, does not establish personal participation under § 1983."

---

[14]Plaintiff also states he wishes to remove John W. Suthers as a defendant (*id.*); however,
Defendant Suthers previously has been dismissed (Doc. No. 63).

*Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009).  Therefore, this amendment would be subject to dismissal as futile and properly is denied.

### b.    *Amendments to Add Ceila Schwartz as a Defendant*

Plaintiff seeks to add Ceila Schwartz, the librarian at the BVCF, as a defendant, alleging on August 5, 2010, she "open[ed] and read and rejected plaintiff's legal mail from his lawyer without plaintiff's permission and rejected that mail, also, when she opened and read other legal materials."  (Doc. No. 55-1 at 2, ¶ 4.)  Defendants argue the proposed amendments regarding Ms. Schwartz do not "relate back" to the date of the filing of the original Complaint and are barred by the statute of limitations.  (Resp. Mot. Amend at 5–7.)

Actions brought pursuant § 1983 are subject to the general personal injury limitation period of the state in which the action arose.  *Hunt*, 17 F.3d at 1265.  In Colorado, the limitation on a personal injury claim brought pursuant to Section 1983 is two years.  See Colo. Rev. Stat. § 13-80-102(1)(g) (creating a two-year limitation period for "[a]ll actions upon liability created by a federal statute where no period of limitation is provided in said federal statute" and for "[a]ll other actions of every kind for which no other period of limitation is provided"); *Blake v. Dickason*, 997 F.2d 749, 750 (10th Cir. 1993) (applying Colo. Rev. Stat. § 13-80-102 to a § 1983 claim).  However, federal law, rather than state law, determines when a cause of action accrues. *See Indus. Constructors Corp. v. U.S. Bureau of Reclamation*, 15 F.3d 963, 968 (10th Cir. 1994).  Pursuant to federal law, "[t]he statute of limitations begins to run when the plaintiff knows or has reason to know of the existence and cause of the injury which is the basis of his action."  *Id.* at 969.  That is, "[a] civil rights action accrues when facts that would support a

cause of action are or should be apparent." *Fratus v. Deland*, 49 F.3d 673, 675 (10th Cir. 1995) (citations omitted).  Further, once a defendant satisfies her initial burden to show that a claim is untimely, the burden shifts to Plaintiff to establish a later accrual date of the statute of limitations or to show that there is a basis to toll the accrual date.  *See Aldrich v. McCulloch Props., Inc.*, 627 F.2d 1036, 1041 n.4 (10th Cir. 1980).

Defendants argue that the proposed amendments to add Ms. Schwartz proposed by Plaintiff are time barred because Plaintiff did not file his motion until after the statute of limitations expired on August 5, 2012.  Plaintiff's claims against Ms. Schwartz accrued, at the latest, on August 5, 2010, when Ms. Schwartz allegedly " open[ed] and read and rejected plaintiff's legal mail from his lawyer without plaintiff's permission." (*See* Doc. No. 55-1 at 2, ¶ 4.)  Plaintiff alleges Ms. Schwartz, "over the objection of plaintiff, began to read the legal material page by page and then allowed another staff member to read the materials as well, an officer Smith. [Ms.] Schwartz began to comment on plaintiff's charges and the testimony she was reading and even asked several questions of plaintiff about his case that plaintiff refused to answer." (*Id.* at 5.)  Thus, Plaintiff knew or had reason to know of the existence and cause of the injury which is the basis of his action on August 5, 2010.  Plaintiff did not file his initial Complaint in this case until July 23, 2012.  Thus, nearly the entire limitations period had already passed by the time Plaintiff filed his initial complaint.  Between the filing of Plaintiff's initial Complaint and his Motion to Amend, another eight months passed.  These two combined periods, during which the limitations period was not tolled, total over thirty-one months, well beyond the two-year statute of limitations period.  Thus, because Plaintiff seeks to amend the

complaint after the statute of limitations has run, the proposed amended complaint is subject to

dismissal as futile unless it relates back to the original complaint under Fed. R. Civ. P. 15(c).

Rule 15(c) determines whether or not a plaintiff may amend a complaint to add a

defendant by relating that amended complaint back to the original one and thereby avoiding the

bar set by the statute of limitations. *Wilson v. U.S. Gov't*, 23 F.3d 559, 562 (1st Cir. 1994). "In

order for an amendment adding a new party to relate back to the date of the original complaint

under Rule 15(c), all the conditions set forth in F[ed]. R. Civ. P. 15(c) must be met." *Watson v.*

*Unipress, Inc.*, 733 F.2d 1386, 1389 (10th Cir. 1984). Application of Rule 15(c) is "a purely

legal determination." *Garrett v. Fleming*, 362 F.3d 692, 695 (10th Cir. 2004) (citation omitted).

If the applicable statute of limitations has run, an amended complaint may relate back to

the date of the timely filed original complaint when:

> (A) the law that provides the applicable statute of limitations allows relation back;
> (B) the amendment asserts a claim or defense that arose out of the conduct,
> transaction, or occurrence set out—or attempted to be set out—in the original
> pleading; or
> (C) the amendment changes the party or the naming of the party against whom a
> claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided
> by Rule 4(m) for serving the summons and complaint, the party to be brought in
> by amendment:
> > (I) received such notice of the action that it will not be prejudiced
> > in defending on the merits; **and**
> > (ii) knew or should have known that the action would have been
> > brought against it, but for a mistake concerning the proper party's
> > identity.

Fed. R. Civ. P. 15(c)(1)(A–C) (emphasis added).

Defendants argue, and this court agrees, that there is no indication that Ms. Schwarz has

ever received notice of this case or should have known that this action would be brought against

her but for a mistake of identity.  Moreover, Plaintiff does not claim in his Motion to Amend or his Reply that he previously failed to name Ms. Schwartz as a defendant and assert allegations against her because of a mistaken identity.  Rather, Plaintiff asserts "[D]efendant Schwartz was told to her face, in writing, and by several grievances that she was being sued."  (Reply Mot. Amend at 6.)

Though Defendants do not argue it, Plaintiff's attempt to add the claim regarding the opening and rejection of the August 2010 package against Defendant Griggs, the statute of limitations also bars that proposed amendment, as that incident did not *arise out of* the conduct, transaction, or occurrence set out in Plaintiff's original Complaint.  *See* Fed. R. Civ. P. 15(c)(1)(B).

Therefore, Plaintiff's proposed amendments to add Ms. Schwartz as a defendant and to add this claim against Defendant Griggs are futile, and Plaintiff's motion to make these amendments should be denied.

### c.    *Amendment to Seek Compensatory Damages*

The defendants argue that Plaintiff's proposed amendment to add a claim for compensatory damages must be denied because he has not alleged that he suffered any physical injury.  (Resp. Mot. Amend at 12.)  The Prison Litigation Reform Act (PLRA) states, "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.  42 U.S.C. § 1997e(e).  *See also Perkins v. Kansas Dep't of Corrs.*, 165 F.3d 803, 807 (10th Cir. 1999).  Section 1997e(e) applies regardless of the nature of the underlying

substantive violation asserted.  *Searles v. Van Bebber*, 251 F.3d 869, 876 (10th Cir. 2001)

(applying section 1997e(e) to the plaintiff's First Amendment claim for free exercise of religion).

Plaintiff does not allege a physical injury.  Thus, his request for recovery of

compensatory damages for mental and emotional injury is barred by the PLRA.  Nevertheless,

section 1997e(e) does not bar recovery of nominal or punitive damages.  *Searles*, 251 F.3d at

879, 881.  Thus, to the extent Plaintiff is seeking recovery, including nominal or punitive

damages, unrelated to mental and emotional harm, a prior showing of physical injury does not

apply.  *See id.*, 251 F.3d at 876 ("The statute limits the remedies available, regardless of the

rights asserted, if the <u>only</u> injuries are mental or emotional.") (emphasis added).

Thus, the court recommends that, to the extent the District Court grants the Motion to

Amend, Plaintiff's request for recovery for mental or emotional injuries as a result of

Defendants' conduct be denied.

**WHEREFORE**, for the foregoing reasons, the court respectfully

**RECOMMENDS** that the "Motion to Dismiss" (Doc. No. 19) be **GRANTED** in its

entirety; the court further

**RECOMMENDS** that Plaintiff's "Motion for Leave to File an Amended Complaint"

(Doc. No. 55) be **GRANTED** in part and the proposed amended complaint (Doc. No. 55-1) be

accepted only to allow Plaintiff to assert only the claim for denial of access to courts, with

Defendant Griggs as the only remaining defendant, based on the defendant's alleged failure to

allow Plaintiff access to the legal materials sent to him by the private investigator.  Additionally,

if the District Court grants this portion of the Motion to Amend, to the extent Plaintiff seeks

relief for mental or emotional injuries as a result of the Defendant's conduct alleged in this

claim, this court recommends that the District Court deny the motion to amend to request for

recovery of such injuries.  The Motion to Amend should be **DENIED** and **REJECTED** in all

other respects.  The court further

   **RECOMMENDS** that the District Court certify, pursuant to 28 U.S.C. § 1915(a)(3), that

any appeal from this recommendation would not be taken in good faith and therefore *in forma*

*pauperis* status will be denied for the purpose of appeal.  *See Coppedge v. United States*, 369

U.S. 438 (1962).  Thereafter, if Plaintiff files a notice of appeal he also must pay the full $455.00

appellate filing fee or file a motion to proceed *in forma pauperis* in the United States Court of

Appeals for the Tenth Circuit within thirty days of the court's final order in accordance with Fed.

R. App. P. 24.

## ADVISEMENT TO THE PARTIES

   Within fourteen days after service of a copy of the Recommendation, any party may

serve and file written objections to the Magistrate Judge's proposed findings and

recommendations with the Clerk of the United States District Court for the District of Colorado.

28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A

general objection that does not put the district court on notice of the basis for the objection will

not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's

report and recommendation must be both timely and specific to preserve an issue for de novo

review by the district court or for appellate review."  *United States v. One Parcel of Real Prop.*

*Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to

make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Prop.*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 14th day of June, 2013.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge