IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12–cv–01921–PAB–KMT

DELMART E.J.M. VREELAND, II,

Plaintiff,

v.

SERGEANT GRIGGS, CDOC/BVCF Mailroom,

Defendant.

_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**Magistrate Judge Kathleen M. Tafoya**

    This case comes before the court on Defendant Dwight Griggs's "Amended Motion for

Summary Judgment" (Doc. No. 165, filed November 17, 2014).   Plaintiff filed his response on

February 9, 2015 (Doc. No. 197 [Resp.]), and Defendant filed his reply on March 26, 2015 (Doc.

No. 197 [Reply]).   Pursuant to this court's Order, Defendant filed a Supplemental Response on

July 24, 2015.   (Doc. No. 219 [Supp. Resp.].)

## STATEMENT OF CASE

    Plaintiff was, at the time of the incidents alleged in his Amended Complaint, an inmate at

the Buena Vista Correctional Facility ("BVCF") in the Colorado Department of Corrections

("CDOC").   (Doc. No. 89 [Am. Compl.], filed November 13, 2013.)   Plaintiff asserts claims that

Defendant violated his First Amendment rights.   (*See id.*)

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a).   The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case.   *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter."   *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994) (citing *Celotex*, 477 U.S. at 325).   The nonmoving party may not rest solely on the allegations in the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial."   *Celotex*, 477 U.S. at 324; *see also* Fed. R. Civ. P. 56(c).   A disputed fact is "material" if "under the substantive law it is essential to the proper disposition of the claim."   *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir.1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).   A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party.   *Thomas v. Metropolitan Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (citing *Anderson*, 477 U.S. at 248).

When ruling on a motion for summary judgment, a court may consider only admissible evidence.   *See Johnson v. Weld County, Colo.*, 594 F.3d 1202, 1209–10 (10th Cir. 2010).   The factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment.   *Concrete Works*, 36 F.3d at 1517.   Moreover, because Plaintiff is proceeding *pro se*, the court, "review[s] his pleadings and other papers liberally and

hold[s] them to a less stringent standard than those drafted by attorneys."   *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see also Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (holding allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers").   At the summary judgment stage of litigation, a plaintiff's version of the facts must find support in the record.   *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1312 (10th Cir. 2009).   "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."   *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Thomson*, 584 F.3d at 1312.

## ANALYSIS

In his Amended Complaint, Plaintiff asserts claims that Defendant Griggs mishandled his mail in August of 2010 and June of 2012 and that Defendant's alleged mishandling of the mail hindered Plaintiff's ability to access the courts in violation of the First Amendment.   Defendant moves for summary judgment on all claims.

### 1.   *Failure to Exhaust Administrative Remedies*

Defendant argues that Plaintiff failed to exhaust his administrative remedies under the Prison Litigation Reform Act of 1996 ("PLRA"), 42 U.S.C. § 1997e(a), regarding his claims that his June 2012 mail was mishandled.   (Mot. at 12–14.)

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are

exhausted." 42 U.S.C. § 1997e(a).   The "PLRA's exhaustion requirement applies to all inmate

suits about prison life." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).   *See also Booth v.*

*Churner*, 532 U.S. 731, 731–32 (2001) (PLRA requires exhaustion in all matters regardless of

remedy sought and availability of remedy at the agency level).

 The PLRA's requirement that an inmate exhaust all available administrative remedies

before initiating suit is mandatory.   *See Woodford v. Ngo*, 548 U.S. 81, 85 (2006) ("Exhaustion

is no longer left to the discretion of the district court, but is mandatory.").   *See also Jones v.*

*Bock*, 549 U.S. at 210–212 ("There is no question that exhaustion is mandatory under the PLRA

and that unexhausted claims cannot be brought in court.").   "To exhaust administrative

remedies an inmate must properly comply with grievance procedures; substantial compliance is

insufficient." *Fields v. Okla. State Penitentiary*, 511 F.3d 1109, 1112 (10th Cir. 2007).   "[T]o

properly exhaust administrative remedies prisoners must complete the administrative review

process in accordance with the applicable procedural rules,—rules that are defined not by the

PLRA, but by the prison grievance process itself." *Bock*, 549 U.S. at 218 (internal quotation

marks and citation omitted).   Thus, it is the prison's own grievance procedures that set forth

what the prisoner must do in order to exhaust his or her administrative remedies.   *Id.*, 549 U.S.

at 218 (citation omitted).   After *Jones v. Bock*, a failure to exhaust administrative remedies

constitutes an affirmative defense which must proved by defendants.   *Roberts v. Barreras*, 484

F.3d 1236, 1241 (10th Cir. 2007).

 The CDOC provides inmates with administrative remedies in the form of a grievance

process set forth in CDOC Administrative Regulation (AR) 850-04.   (*See* Mot., Aff. of A.

DeCesaro [Doc. No. 165-1], ¶ 4; [Doc. No. 219-5 at 34–41 [AR 850-04].)[1]   Under AR 850-04

inmates must grieve any alleged injuries or unlawful conduct by pursuing a three-step process:

(1) attempt to resolve the issue or complaint by filing a Step One grievance within 30 days of the

discovery of the issue or complaint; (2) if the inmate is not satisfied with the response/resolution of

his Step One grievance, he must file a Step Two grievance within five days of receipt of the written

response to his Step One grievance; and (3) if the inmate is still not satisfied with the

response/resolution of his grievance, he must file a Step Three grievance within five days of

receipt of the written response to his Step Two grievance.   (*Id.* ¶¶ 5–8.)

Defendant submits evidence that Plaintiff filed four grievances relating to the handling of

his mail in June 2012.   (*See* Doc. No. 165-1, ¶¶ 14–20.)   Plaintiff filed the first Step 1

grievance on July 11, 2012, complained that Defendant did not follow policy concerning the

rejection of his mail, as Defendant did not forward the mail to the reading committee for review.

(*Id.*, ¶ 15; Doc. No. 165-1 at 32.)   The CDOC denied Plaintiff's Step 1 grievance on July 12,

2015.   (*Id.*)   Plaintiff filed his original complaint in this action on July 23, 2012.   (Doc. No.

1.)   Plaintiff then filed his Step 2 grievance on August 6, 2012, and his Step 3 grievance on

September 21, 2012.   (*Id.*)   Plaintiff later filed three additional grievances regarding the

handling of his mail in June 2012 on August 1, October 2, and December 12, 2012.   (*Id.*, Doc.

No. 165-1, ¶¶ 18–20.)

---

[1] The Administrative Regulations provided in Document Number 219 are those in effect at the
time periods relevant to Plaintiff's claims.

Exhaustion must occur before the filing of the lawsuit, not while it is pending.   *See Porter*, 534 U.S. at 523–25.   *See also Jernigan v. Stuchell*, 304 F.3d, 1032–33 ("An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies.").   Because Plaintiff failed to complete the grievance process prior to filing this matter, he failed to exhaust his administrative remedies with regard to the handling of his mail in June 2012.

In order overcome his failure to exhaust, Plaintiff must demonstrate that administrative remedies were unavailable.   *Tuckel v. Grover*, 660 F.3d 1249, 1254 (10th Cir. 2011).   A remedy is unavailable when prison officials hinder, thwart, or prevent an inmate's attempts to exhaust that remedy.   *Tuckel*, 660 F.3d at 1252.   To make this showing, Plaintiff must prove (1) that the threat or intimidation actually did deter him from lodging a grievance or pursuing a particular part of the prison administrative process; and (2) that the threat or intimidation would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance or pursuing the prison administrative process.   660 F.3d at 1254.

Plaintiff concedes that he did not exhaust his administrative remedies prior to filing this case but argues that, because Defendant Griggs allegedly failed to provide Plaintiff with a grievance form and/or appeal form upon his request, Plaintiff had no administrative remedies available.   (Resp. at 17; 45, ¶¶ 61–64; and 63.)   Indeed, "[a] prisoner who is denied the proper grievance forms lacks an available administrative remedy."   *Price* v. Shinn, 189 F. App'x 803, 805 n.3 (10th Cir. 2006) (citing *Mitchell v. Horn*, 318 F.3d 523, 529 (3d Cir. 2003); *Miller v. Norris*, 247 F.3d 736, 740 (8th Cir. 2001)).   In support of this contention, Plaintiff attaches an

Offender Communication sent to Defendant Griggs on July 1, 2012, in which Plaintiff inquires "why [he] can not [sic] have an appeal of the decision [Defendant Griggs] made rejecting [the mail]?"   (*Id.* at 63.)   The Offender Communication does not demonstrate, however, that Defendant Griggs failed to provide a grievance form.   (*See id.*)   Rather, the evidence shows that Plaintiff was able to, within the allowable time period for filing a grievance and <u>after</u> he sent the Offender Communication, file his Step 1 grievance on July 12, 2012.   (Doc. No. 165-1 at 32.)   Moreover, after Plaintiff filed his initial complaint in this matter, he filed his Step 2 grievance on August 6, 2012.[2]   (*See* Mot., Doc. No. 165-1 at 34.])   Finally, on September 21, 2012, Plaintiff filed his Step 3 grievance.   (*Id.* at 35.)   Neither the Offender Communication nor the Step 1, Step 2 or Step 3 grievances demonstrates that Defendant Griggs or any other CDOC employee failed to provide Plaintiff a grievance form.   To the contrary, the evidence shows that Plaintiff was not deterred from lodging the grievance.   *Tuckel*, 660 F.3d at 1254.

Thus, the court concludes that the record supports the affirmative defense that Plaintiff did not exhaust his available administrative remedies as to the claims involving the handling of his mail in June 2012.   Defendant is thus entitled to summary judgment regarding these claims.

_____

[2]  In the Step 2 grievance, Plaintiff complained Defendant Griggs, by sending his package to the reading committee after a nearly two-months' delay, denied Plaintiff an appeal process.   (*Id.*)   However, Plaintiff acknowledged that, as the mail had been sent to the reading committee, the grievance procedure set forth in AR 850-04 did not apply, and Plaintiff received a response to the Step 2 grievance in which he was advised he would have the opportunity to appeal the decision of the reading committee.   (*Id.*)   To the extent Plaintiff sought review of the reading committee's decision, Plaintiff was obligated to utilize the appeal procedures provided under AR 300-26 prior to filing this action.   (*See* Mot., Ex. A-1, ¶¶ 10, 16, 18; Doc. No. 210-5 at 34; 219-2 at 53-60.)

7

**2.      *First Amendment Claim Regarding August 2010 Mail***

Plaintiff alleges Defendant Griggs violated the First Amendment in his handling of

Plaintiff's legal mail in August 2010.   Plaintiff alleges Defendant Griggs opened and read

Plaintiff's mail outside of his presence, allowed the item of mail to be passed around and read by

other staff members, and delayed the delivery of his package by several weeks.   (Doc. No. 89 at

25.)

The First Amendment protects a prisoner's right to receive mail.   *Thornburgh v. Abbott*,

490 U.S. 401, 407 (1989).   Prison officials may regulate that right, however, as long as the

regulation is "reasonably related to legitimate penological interests."   *Id.* at 409 (quoting *Turner*

*v. Safley*, 482 U.S. 78, 89 (1987)).   On a claim that prison officials violated an inmate's First

Amendment rights by mishandling mail, it is the plaintiff's burden to prove that: (i) his mail was

mishandled; (ii) that the particular named defendant was responsible for that mishandling; (iii) that

the mishandling was purposeful; and (iv) there is a plausible inference to be drawn that the basis

for that mishandling was not reasonably related to a legitimate penological interest.   *Gee v.*

*Pacheco*, 627 F.3d 1178, 1187–88 (10th Cir. 2010).

The BVCC is comprised of two prison complexes, which can house up to 1,184 offenders,

all of whose mail is processed through the one mailroom.   (*See* Mot., Aff. of Def. Griggs [Doc.

No. 165-4], ¶ 4; Aff. of M. McCormac, [Doc. No. 165-5], ¶ 5.)   On average, the mailroom, which

is staffed with three officers, processes approximately 15,500 pieces of incoming mail, and

approximately 14,500 pieces of outgoing mail per month.   (Doc. No. 165-4, ¶ 5.)   All offender

8

mail, legal or otherwise, is subject to inspection by prison officials in order to maintain the safety and security of the prison environment as the mail provides a direct avenue into the prison for the smuggling of contraband.   (Doc. No. 165-1, ¶ 7; Doc. No. 165-5,¶ 6.)   Of particular concern for the mailroom is the receipt of large packages as such packages offer an easy means by which to smuggle contraband.   (Doc No. 165-4, ¶ 10; Doc. No. 165-5,¶ 8.)

On August 10, 2010, Plaintiff received a box weighing approximately 32 pounds from an attorney named Michael Heher.   (Doc. No. 165-4, ¶ 15; Doc. No. 165-5, ¶ 14.)   The package was processed as restricted inspection mail, and Plaintiff was called to the mailroom that same day so that the box could be opened and inspected for contraband in his presence.   (Doc. No. 165-4, ¶¶ 21, 27.)   Upon his arrival to the mailroom, Plaintiff initialed the Incoming Restricted Inspection Mail Log, evidencing that the package was delivered on August 10, 2010.   (Doc. No. 165-4, ¶ 25; Doc. No. 165-5, ¶ 20; *see also* Incoming Restricted Inspection Mail Log, Doc. No. 165-4 at 42.) The box was then opened in Plaintiff's presence so that it could be inspected for contraband before it was released into the prison.   (Doc. No. 165-4, ¶ 27.)   Once the box was opened, Lt. Knapic expressed concerns over the volume of paper within the box, specifically as to whether the material would surpass the allowable limits of legal papers permitted under policy.   (*Id.*)

Per CDOC policy, offenders are only permitted to personally possess two cubic feet of legal papers within their cells.   (Doc No. 165-4, ¶ 28; Doc. No. 165-6, ¶ 23; *see also* Doc. No. 165-4 at 44 [AR 850-06, § III.K].)   This limitation is intended to further the safety and security goals of the CDOC as it reduces the risk of fire by limiting the amount of flammable materials maintained within an offender's cell, and it reduces the amount of material in which an offender

9

can hide contraband within his cell.   (*Id.*)   Additionally, at that time, AR 750-03 was undergoing

revisions which would dictate the format required for this particular kind of material if being

mailed to an offender.   (*Id.*)   For these reasons, Lt. Knapic decided to re-seal Plaintiff's package,

and temporarily hold the item of mail pending further direction from Legal Services.   (Doc. No.

165-5, ¶ 33; *see* Doc. No. 165-4 at 42 [Incoming Restricted Inspection Mail Log indicating box

was resealed.])

Legal Services was contacted, and Ms. Reynolds advised that the package should be

returned to sender.   (Doc. No. 165-4, ¶ 32; Doc. No. 165-5, ¶ 26.)   On August 12, 2010,

Defendant Griggs sent Teresa Reynolds of Legal Services an email asking for clarification

regarding the package and stating, "It is my understanding . . . that [i]f the material inside of this

box . . . does not contain material that is a threat to the facility and it fits within his legal box that

Vreeland may have it."   (Doc. No. 165-4, ¶ 36; Doc. No. 165-4 at 73 [email from Defendant

Schwartz to Ms. Reynolds].)   Ms. Reynolds of Legal Services notified Defendant Griggs that

Plaintiff could receive the materials if they were within allowable property limits and did not

contain sensitive information.   (Doc. No. 165-4, ¶ 37; Doc. No. 165-4 at 73.)   Ms. Reynolds also

advised that Ms. Schwartz, the facility law librarian, should be present when the material was

inspected for contraband and security concerns.   (*Id.*)

On August 16, 2010, Plaintiff was called back to the mailroom so that the box could be

opened and inspected for contraband in his presence.   (Doc. No. 165-4, ¶ 38.)   Upon his arrival to

the mailroom, Plaintiff initialed the Incoming Restricted Inspection Mail Log, evidencing that the

package was delivered to Plaintiff on August 16, 2010.   (Doc. No. 165-4, ¶ 39; Doc. No. 165-5, ¶

10

29; *see also* Doc. No. 165-4 at 74 [Incoming Restricted Inspection Mail Log initialed by Plaintiff on August 16, 2010].)   The box was inspected by Ms. Schwartz who determined twelve pages of documents (out of thousands) would be withheld from Plaintiff because they contained personal contact information of victims.   (Doc. No. 165-4,¶ 42; Aff. of C. Schwartz [Doc. No. 165-6], ¶¶ 16, 19; Aff. of D. Smith [Doc. No. 165-7],¶ 9; *see also* Doc. No. 165-4 at 75 [Mailroom Contraband Slip dated August 16, 2010].)   Ms. Schwartz determined that such information constituted contraband because its release into the prison environment would pose a serious threat to the safety and security of the prison, as well as to the victims themselves.   (Doc. No. 165-6, ¶ 16.)

The CDOC has legitimate penological concerns related to safety and security regarding the release of certain information into the prison environment.   (Doc. No. 165-4, ¶ 72; *see also* Doc. No. 219-4 at 20 [AR 750-03, § III.K.7.[3]].)   Personal identifying information of victims is the type of information that is not permitted to be released into the prison environment for the protection of the victims, as well as the security of the prison.   (*Id.*)   Therefore, individuals mailing this type of information are responsible for ensuring that necessary redactions are made, or they risk rejection of the material mailed.   (*Id.*, ¶ 73.)

Because redactions were not made in this instance, Ms. Schwartz determined that only those pages with the victim information would be rejected.   (Doc. No. 165-6, ¶ 16.)   Defendant Griggs completed a Mailroom Contraband Slip, and noted the items being withheld as specifically

_____

[3] This version of AR was not effective until January 15, 2011.

11

relayed to him by Ms. Schwartz.   (Doc. No. 165-4, ¶ 41; Doc. No. 165-6,¶ 20–21; Doc. No. 165-7,¶ 11; Doc. No. 165-4 at 75.)   Following the inspection process, Plaintiff was provided with the bulk of material within the box and chose to mail the twelve pages of rejected documents back to sender.   (Doc. No. 165-4,¶ 44, 46.)   In accordance with Plaintiff's instructions, those materials were returned to Mr. Heher on August 16, 2010.   (Doc. No. 165-4,¶ 46; Doc. No. 165-5, ¶ 31; Doc. No. 165-4 at 75.)

The evidence shows that Defendant Griggs acted in conformance with CDOC policy and the law in his handling of Plaintiff's mail.   In his response, Plaintiff contends that the "reasons stated on the mailroom contraband rejection form . . . were entirely false claims, and that the pages from November 2006 did not contain any personal information."   (Resp. at 21.)   In support of this contention, Plaintiff directs the court to Document Number 17-1 filed in Case Number 14-cv-02175-PAB, Petition for Writ of Habeas Corpus, also in this Court.   The document is a copy of the state court docket sheet from Plaintiff's criminal case, 2004CR706.   (*See* Case No. 14-cv-2175-PAB, Doc. 17-1.)   The state court docket sheet provides no insight as to the documents sent to Plaintiff in August 2010 and fails to support Plaintiff's contention.

The undisputed evidence shows, on the other hand, that the Mailroom Contraband Slip completed by Defendant Griggs and signed by Plaintiff on August 16, 2010, that the documents sent to Plaintiff contained transcripts from November 28, 2006 and August 7, 2007, and mentioned

"specific personal information."[4]   (Doc. No. 165-4 at 75.)   Under Colorado law, prison officials

are required to protect a victim's right to justice by making all reasonable efforts to exclude or

redact certain personal identifying information from release into the prison.   Colo. Rev. Stat. §

24-4.1-302.5(w).   The court finds there was a legitimate penological interest in the withholding of

the documents.   *See Gee*, 627 F.3d 1187–88.

      The court agrees with Defendant that Plaintiff provides no evidence demonstrating that

Defendant's alleged mishandling was deliberate and invidious.   Indeed, absent evidence of a

broader plan or course of conduct to censor Plaintiff's mail unconstitutionally, an honest error, if

any, by prison officials does not justify relief under § 1983.   *Lingo v. Boone*, 402 F.Supp. 768, 773

(C.D. Cal. 1975) (prisoner not entitled to monetary relief under § 1983 where prison officials

erroneously withheld a single piece of mail on the grounds that it was inflammatory); *see also*

*Smith v. Maschner*, 899 F.2d 940, 944 (requiring showing of improper motive).   Here, Plaintiff

does not provide any evidence that Defendant deliberately mishandled Plaintiff's mail.   Rather,

the evidence shows that Defendant Griggs inquired of Legal Services about the proper procedure

for going through the box and having Ms. Schwartz and Plaintiff in attendance to review the

materials in the package.   (Doc. No. 165-4, ¶ 36; Doc. No. 165-4 at 7.)   After the review of the

---

[4] Plaintiff also attaches to his response an answer to an Offender Communication sent to
Defendant Griggs regarding the withheld mail.   (*See* Resp. at 54.)   In his answer, Defendant
Griggs confirms that "[t]he materials in the box contain victim information."   (*Id.*)

package, Plaintiff, six days after the package arrived, received all but twelve of thousands of pages contained in the box.[5]    (Doc. No. 165-4,¶ 42; Doc. No. 165-6,¶ 21.)

Accordingly, Plaintiff has failed to establish the necessary elements cognizable of a First Amendment violation.   Defendant Griggs is entitled to summary judgment on Plaintiff's First Amendment claim concerning the handling of his mail in August 2010.

### 3.    *Denial of Access to Courts Claim Regarding June 2010 Mail*

Plaintiff has been allowed to proceed on his denial of access claims based upon those allegations relating to his Florida state court conviction and his attempts to seek post-conviction relief following the denial of his appeal concerning his Colorado state court conviction.   (*See* Doc. 76 at 8.)   Defendant argues that Defendant Griggs' handling of Plaintiff's mail in August 2010 did not impede Plaintiff's access to the courts.

To prove a denial of access to the courts claim, Plaintiff "must show that non-delivery of his legal mail resulted in 'actual injury' by 'frustrat[ing],' 'imped[ing],' or 'hinder[ing] his efforts to pursue a [nonfrivolous] legal claim.' "   *Simkins v. Bruce*, 406 F.3d 1239, 1243 (10th Cir. 2005) (quoting *Lewis v. Casey*, 518 U.S. 343, 351–53 (1996)); *see also Peterson v. Shanks*, 149 F.3d 1140, 1145 (10th Cir. 1998) ("To present a viable claim for denial of access to courts, . . . an inmate must allege and prove prejudice arising from Defendants' actions.").   The non-frivolous claims

---

[5] To the extent Plaintiff argues Defendant Griggs failed to comply with CDOC policies in the way he processed the package (*see* Resp. at 20), a prison official's failure to follow prison procedures does not automatically translate to a constitutional violation.   *See Hostetler v. Green*, 323 F. App'x 653, 658 (10th Cir. 2009) (citing *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996) ("[A] prison official's failure to follow the prison's own policies, procedures or regulations does not constitute a violation of due process, if constitutional minima are nevertheless met.")).

involved must be "habeas corpus or civil rights actions regarding current confinement." *Carper v. Deland*, 54 F.3d 613, 616 (10th Cir. 1995).

Plaintiff alleges that Defendant Griggs' confiscation of his mail in 2010 impeded his ability to pursue a post-conviction claim related to his Florida criminal conviction in Case No. 1997CF1596A.[6]   Plaintiff appears to allege that his motion to re-open his case would have been granted but for Defendant Griggs' confiscation of his mail.

The evidence shows that Plaintiff's motion to re-open his case did not fail as a result of the handling of his mail in 2010.   Rather, Plaintiff's motion was denied based on a deficiency logically and practically unrelated to the handling of his mail in 2010.   Plaintiff filed his motion to re-open in the Florida court on September 15, 2010.   (*See* Doc. No. 165-11 at 1-3 [Florida Court Records].)   In the motion, Plaintiff argued that his plea agreement in his Florida case had been violated by his conviction in his Colorado case.   (*See id.*)   The court eventually, on February 19, 2013, denied Plaintiff's motion as time-barred under Fla. R. Crim. P. 3.850(b), and noted that Plaintiff's contentions regarding his plea agreement were unsupported.   (*Id.*)   Specifically, the court noted that Plaintiff's criminal case was final on July 9, 1998, and that he waited six years to file his motion to reopen the case.   (*Id.* at 32, 33.)   Thus, it is clear that a six-day delay in Plaintiff's receiving the documents sent to him in August 2012 did not have any effect on his motion to reopen his case Florida case.   Further, Plaintiff did not attach any exhibits from the box sent to him or otherwise to his motion to reopen the case.   Thus, the evidence show that the court's

---

[6] As discussed *supra*, because this court recommends that Defendant be granted summary judgment on Plaintiff's claims surrounding the alleged mishandling of his mail in 2012, the court need not address Plaintiff's claims that he was denied access to the courts related to the 2012 mail.

denial of Plaintiff's post-conviction motion was not based on the denial of the records contained in the August 2010 mail.

Accordingly, Defendant Griggs is entitled to summary judgment on Plaintiff's access to courts claim regarding his June 2010 mail.

### 4.     *Qualified Immunity*

Defendant, in his individual capacity, raises the defense of qualified immunity to Plaintiff's claims.   Whether a defendant is entitled to qualified immunity is a legal question. *Wilder v. Turner*, 490 F.3d 810, 813 (10th Cir. 2007).   To overcome the defendant's claim of qualified immunity, the plaintiff must establish that the defendants' actions violated plaintiff's constitutional or statutory right and that the right at issue was clearly established at the time of the defendants' alleged unlawful conduct.   *Albright v. Rodriguez*, 51 F.3d 1531, 1534 (10th Cir. 1995).   "[C]ourts have discretion to decide which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."   *Id.* "Qualified immunity is applicable unless" the plaintiff can satisfy both prongs of the inquiry. *Herrera v. City of Albuquerque*, 589 F.3d 1064, 1070 (10th Cir. 2009) (internal quotation marks and citations omitted).

This court recommends that Defendant be granted summary judgment on all of Plaintiff's claims against him.   Thus, Plaintiff has not established that the defendants violated Plaintiff's constitutional or statutory rights, and the defendant is entitled to qualified immunity in his individual capacity.

## CONCLUSION

Based on the foregoing, this court respectfully

**RECOMMENDS** that the "Amended Motion for Summary Judgment" (Doc. No. 165) be **GRANTED.**

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado.   28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).   A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review.   "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review."   *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996).   Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge.   *See Vega v. Suthers*, 195 F.3d 573, 579–80 (10th Cir. 1999) (a district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule");   *One Parcel of Real Prop.*, 73 F.3d at 1059–60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an

issue for *de novo* review by the district court or for appellate review);   *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 28th day of August, 2015.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge