IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 12-cv-01921-PAB-KMT

DELMART E.J.M. VREELAND, II,

Plaintiff,

v.

SERGEANT GRIGGS, CDOC/BVCF Mailroom,

Defendant.

---

**ORDER**

---

This matter is before the Court on the Recommendation of United States Magistrate Judge (the "Recommendation") [Docket No. 237] filed on August 28, 2015. The magistrate judge recommends that the Court grant the Amended Motion for Summary Judgment [Docket No. 165] filed by defendant Griggs. The Court considers plaintiff's September 21, 2015 objection [Docket No. 242] timely filed.

The Court will "determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). However, "a party's objections to the magistrate judge's report and recommendation must be both timely *and specific* to preserve an issue for de novo review by the district court . . . ." *United States v. One Parcel of Real Property Known As 2121 East 30th St.*, 73 F.3d 1057, 1060 (10th Cir. 1996) (emphasis added). To be sufficiently specific, an objection must "enable[] the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute." *See id.* at 1059 (quoting *Thomas v. Arn*, 474

U.S. 140, 147 (1985)). In the absence of a proper objection, the Court may review a magistrate judge's recommendation under any standard it deems appropriate. *See Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991); *see also Thomas*, 474 U.S. at 150 ("[i]t does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a de novo or any other standard, when neither party objects to those findings").[1]

As a threshold matter, plaintiff's objection is 32 pages in length, which clearly exceeds the page limits imposed by this Court's Practice Standards. *See* Practice Standards (Civil cases), Judge Philip A. Brimmer § III.A ("All . . . objections (including objections to the recommendations or orders of United States Magistrate Judges) . . . shall not exceed **fifteen pages**."). Thus, the first issue is whether plaintiff's objection should be stricken for failure to comply with this Court's Practice Standards. Pro se litigants, particularly those as experienced as plaintiff, are not excused from complying with the Court's Practice Standards. Nonetheless, in light of plaintiff's pro se status, the Court must liberally construe his filings, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 n. 3 (10th Cir. 1991), and, as a result, the Court finds that striking plaintiff's filing in its entirety is too harsh a sanction for violating

---

[1]This rule, however, does not apply when (1) a pro se litigant has not been informed of the time period for objecting or when (2) the "interests of justice" require review. *Morales-Fernandez v. INS*, 418 F.3d 1116, 1119 (10th Cir. 2005) (citation omitted). Neither exception applies here. The Recommendation advised plaintiff of the deadline to respond and the need to file "specific" objections. Docket No. 237 at 17-18. To the extent plaintiff fails to clearly challenge specific aspects of the Recommendation, he is not entitled to an interests of justice exception. *See 2121 East 30th St.*, 73 F.3d at 1060 ("only an objection that is sufficiently specific to focus the district court's attention on the factual and legal issues that are truly in dispute will advance the policies" underlying the firm waiver rule).

this Court's Practice Standards.

## I. ANALYSIS

Plaintiff alleges that defendant violated his First Amendment rights by interfering with his legal mail in 2010 and 2012. Because the facts giving rise to those claims have been discussed at length elsewhere, *see, e.g.*, Docket No. 67, the Court will discuss only those facts necessary to resolving plaintiff's objections.

### A. August 2010

Plaintiff alleges that defendant violated his First Amendment rights by mishandling his legal mail in August 2010. The magistrate judge found that the following facts were undisputed. *See* Docket No. 237 at 9-12. On August 10, 2010, while incarcerated at the Buena Vista Correctional Facility ("BVCF"), plaintiff received a box weighing approximately 32 pounds from attorney Michael Heher. The package was processed as restricted inspection mail. Plaintiff was called to the mailroom, initialed the Incoming Restricted Inspection Mail Log, and was present when the box was opened while correctional officers inspected it for contraband. Pursuant to CDOC policy, offenders are permitted to possess no more than two cubic feet of legal papers within their cells, a limit which is intended to minimize the amount of flammable material in the cells and reduce the amount of material in which an offender can hide contraband. Lt. Knapic, a correctional officer working in the mailroom at BVCF, expressed concerns that the volume of paper contained in the box would exceed the allowable limits. As a result, Lt. Knapic resealed plaintiff's package and held it in the mailroom pending further direction from Legal Services. Teresa Reynolds from Legal

Services first advised that the package should be returned to Mr. Heher. *See* Docket No. 165-4 at 55. Defendant requested clarification from Ms. Reynolds, who then responded that, so long as the contents of the package fit within plaintiff's "legal box" and are not a security threat, plaintiff could receive the contents of the package. *Id.* at 73. Ms. Reynolds also advised that faculty law librarian Celia Schwartz should be present when the package was inspected for contraband "and potential security concerns (i.e. witness addresses, etc.)." *Id.*

The magistrate judge concluded that CDOC has legitimate penological concerns regarding the release of information into the prison environment, including the personal identifying information of victims. Ms. Schwartz states, "[p]ersonal identifying information of victims is the type of information that is not permitted to be released into the prison environment for the protection of the victims, as well as the security of the prison." Docket No. 165-6 at 3-4, ¶ 16.

On August 16, 2010, plaintiff was called to the mailroom so that the package could be opened and inspected in his presence. Plaintiff initialed the Incoming Restricted Inspection Mail Log stating that the package was delivered to him on August 16, 2010. Docket No. 165-4 at 74. Ms. Schwartz inspected the contents of the package and determined that, of the thousands of pages of documents, twelve pages contained victims' personal contact information and determined that those twelve pages would be withheld. Ms. Schwartz stated, "I determined that this information was subject to rejection as its release into the prison environment would pose a serious threat to the safety and security of the prison." Docket No. 165-6 at 3-4, ¶ 16. Defendant states that he did not personally review the material in the package and did not make any decision

concerning the withholding of any materials, but, rather, that such decisions were made exclusively by Ms. Schwartz. Docket No. 165-4 at 9, ¶ 42. Defendant asserts that his only role in the process of inspecting the package was to complete a Mailroom Contraband Slip, which indicates that plastic folders and transcript pages mentioning specific personal information constituted contraband. Docket No. 165-4 at 9, ¶ 42; *id.* at 75. Plaintiff elected to mail the material deemed contraband back to Mr. Heher, authorizing deduction of $11.80 from his account to be used for postage. Docket No. 165-4 at 9, ¶ 46.

Based upon these facts, the Recommendation concluded that defendant acted in accordance with CDOC policy and the law in handling the package. The Recommendation further found that the documents sent to plaintiff contained transcripts from November 28, 2006 and August 7, 2007 and mentioned specific personal information, which was consistent with what defendant wrote on the Mailroom Contraband Slip. Docket No. 237 at 12-13; *cf.* Docket No. 165-4 at 75. The Recommendation therefore concluded that no genuine dispute of fact exists as to whether the basis for the alleged mishandling of the mail was reasonably related to a legitimate penological interest. Docket No. 237 at 13. The Recommendation also concluded that plaintiff failed to provide any evidence establishing that defendant's alleged mishandling was "deliberate and invidious." *Id.* Because plaintiff failed to establish those two elements of his claim, the Recommendation concluded that defendant was entitled to summary judgment as to plaintiff's First Amendment claim concerning mail mishandling in August 2010. *Id.* at 14.

The Court turns to plaintiff's objections regarding this claim. As an initial matter,

plaintiff argues at various points that the Recommendation's factual findings are inaccurate or unsupported, but, in so doing, fails to identify any evidence in the record in support of such arguments. *See, e.g.*, Docket No. 242 at 18. Such arguments are rejected. *See Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) ("facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein").

Plaintiff argues that, although defendant contends that it was Lt. Knapic who called plaintiff to the mailroom on August 10, 2010 and Lt. Knapic who opened the package in front of plaintiff, it was defendant who issued a rejection slip, which was dated August 11, 2010, not August 10, 2010. Docket No. 242 at 18 (citing Docket No. 55-1 at 160). Although plaintiff appears to suggest that this somehow contradicts defendant's version of events, plaintiff fails to establish that any such contradiction is material to the Recommendation's conclusions as to the third or fourth elements of his mail mishandling claim. No such relevance is apparent to the Court.

Plaintiff submitted a CD in conjunction with his objection. *See* Docket No. 243. Plaintiff contends that the CD contains a copy of the original "Court of Appeals transcripts record" from his Douglas County, Colorado criminal case (the "Douglas County case"). Docket No. 242 at 18-19. Mr. Heher's affidavit states that he received from the Colorado Court of Appeals a CD containing 63 files, which were transcripts that were part of the record on appeal. Docket No. 242-3 at 3. Mr. Heher states that those transcripts were the only transcripts he was aware of regarding Mr. Vreeland's Douglas County, Colorado criminal case. *Id.* Plaintiff contends that this affidavit establishes that the CD contains the same documents as the package Mr. Heher sent

to him in August 2010. Docket No. 242 at 18-19. Plaintiff claims that the November 28, 2006 transcript on the CD contains no personal information on pages 17-26 and that the CD does not contain a transcript from August 7, 2007. Plaintiff contends that this contradicts the Mailroom Contraband Slip and defendant's statements that certain pages of the November 28, 2006 and August 7, 2007 transcripts were withheld for containing victims' personal contact information. *Id.*; *see also* Docket No. 165-4 at 75. The Court rejects this argument for multiple reasons. First, plaintiff did not submit the CD in support of his response to defendant's motion for summary judgment. Thus, the CD was not properly before the magistrate judge. Federal Rule of Civil Procedure 72(b)(3) provides that the district judge "may" – but is not required to – receive new evidence when resolving objections to a magistrate judge's recommendation. A number of courts have held that the language of the rule places this decision within the district court's discretion. *See Clark v. United States*, 360 F. App'x 660, 663 (7th Cir. 2009) ("The district court, in adopting the magistrate judge's report and recommendation, did not abuse its discretion by refusing to consider the late-submitted affidavit and indulge [plaintiff's] belated attempt to change his story."); *Jasty v. Wright Med. Tech., Inc.*, 528 F.3d 28, 33 (1st Cir. 2008) ("Under 28 U.S.C. § 636(b), a district court reviewing a magistrate judge's report and recommendation has discretion whether to receive further evidence."); *Gonzales v. Qwest Commc'ns Corp.*, 160 F. App'x 688, 690 (10th Cir. 2005) ("The decision whether to accept further evidence after the magistrate judge's recommendation is therefore within the district court judge's discretion."); *Doe v. Chao*, 306 F.3d 170, 183 n.9 (4th Cir. 2002) ("Without adequate

justification for the failure to present the evidence in question earlier, a district court may ignore belatedly tendered evidence offered in opposition to summary judgment after the court has ruled on a summary judgment motion."); *Drew v. Dep't of Corr.*, 297 F.3d 1278, 1290 n.4 (11th Cir. 2002) ("In light of [plaintiff's] failure to present the evidence to the magistrate judge, it would not have been an abuse of discretion for the district court to decline to consider the evidence at all."). Plaintiff provides no justification for his failure to introduce the CD in response to defendant's motion for summary judgment and plaintiff does not suggest any legitimate reason why he could not have earlier provided such evidence. Thus, the Court declines to consider it. *See Doe*, 306 F.3d at 183 n.9.

Even if the Court were to consider the CD, Mr. Heher's affidavit does not establish that he has personal knowledge of the contents of the CD submitted in this case, nor does Mr. Heher state that the contents of the CD are identical to the contents of the package he sent to plaintiff in August 2010. Moreover, plaintiff does not establish that the document defendant referred to on the Mailroom Contraband Slip as the "November 28, 2006 transcript" is the same as the file on the CD labeled "04CR706_11-28-06_Vreeland_Trial."[2] Thus, plaintiff's argument is unsupported.

Plaintiff asserts that the package sent back to Mr. Heher weighed 6 pounds, 10 ounces and cost $11.80 in postage to send, which plaintiff claims is inconsistent with

---

[2]To the contrary, Ms. Schwartz stated that "it is not uncommon for me to use the term 'transcripts' when describing or referring to court records in general," not necessarily just hearing transcripts. Docket No. 165-6 at 4, ¶ 21. Although Ms. Schwartz could not recall with certainty, she stated that the twelve pages withheld from the package were not hearing or trial transcripts. *Id.* at 4, ¶ 22.

defendant's statement that only 12 pages were withheld and mailed back to Mr. Heher. Docket No. 242 at 19-20; *see also* Docket No. 242-4 at 3. Rather, plaintiff contends that the total weight of the package mailed back to Mr. Heher is more consistent with plaintiff's assertion that defendant withheld 2,242 total pages. Docket No. 242 at 20-21. Although plaintiff's argument fails to account for evidence that defendant mailed back to Mr. Heher the 12 withheld pages *and* plastic folders, Docket No. 165-4 at 75, in the same box in which the package from Mr. Heher arrived, *id.* at 9, ¶ 44, the Court assumes, without deciding, that plaintiff has raised a dispute of fact as to this issue. However, this dispute of fact does not, as discussed below, bear on the issue of whether defendant's alleged mishandling of mail was deliberate.

Plaintiff asserts that the Recommendation erred in concluding that plaintiff failed to provide evidence demonstrating that defendant's alleged mishandling of plaintiff's mail was deliberate. Docket No. 242 at 22. Plaintiff argues that he has established various inconsistencies, including that none of the pages withheld from the package contained victims' personal information, that defendant withheld more than twelve pages, that "12 pages does not weigh 6 pounds 10 ounces," and that the 63 transcripts from plaintiff's Douglas County case do not contain any "specific personal information." Docket No. 242 at 22. As discussed above, plaintiff fails to establish these alleged inconsistencies with admissible evidence. Moreover, even assuming that more than twelve pages were withheld, plaintiff's objection fails to raise a genuine dispute of fact as to defendant's testimony that he did not personally review the contents of the package or make any decisions regarding what materials to withhold. *See* Docket No. 165-4 at 9, ¶ 42. Rather, that task fell to Ms. Schwartz and, even assuming that she

elected to withhold more than the claimed twelve pages or that the twelve pages contained no prohibited information, such conduct on the part of Ms. Schwartz does not establish that defendant acted deliberately in mishandling plaintiff's mail. *See Simkins v. Bruce*, 406 F.3d 1239, 1242 (10th Cir. 2005) (holding that plaintiff is required "to allege intentional conduct interfering with his legal mail," but not "malicious motive"). Plaintiff's arguments on this issue, to the extent not addressed above, are not directly responsive to the Recommendation's conclusion that plaintiff failed to establish the third and fourth elements of this claim. Plaintiff has failed to identify reversible error in this aspect of the Recommendation.

**B. June 2012 Legal Mail**

Plaintiff argues that the Recommendation erred in concluding that he failed to exhaust administrative remedies with respect to his claim that defendant mishandled his mail in June 2012. Plaintiff received a package from Elite Protections & Investigations ("Elite"). Docket No. 165-4 at 12, ¶ 60. Ms. Schwartz reviewed the contents of the package and concluded that it contained identifying information regarding victims of and witnesses to plaintiff's crimes. Docket No. 165-6 at 5, ¶ 28.[3] Defendant completed a Notice of Rejection notifying plaintiff that his mail was being rejected. Docket No. 165-4 at 14, ¶¶ 75-76. On July 11, 2012, plaintiff filed a grievance concerning the rejection of the package, arguing that the rejected item of mail should

---

[3]Although marked "Legal Mail," defendant determined that Elite did not fall within the class of specified persons permitted to send restricted inspection mail to plaintiff. Docket No. 165-4 at 12, ¶ 64.

have been forwarded to the reading committee for review. Docket No. 165-1 at 32.[4] On July 23, 2012, plaintiff filed this case. Docket No. 1. On August 1, 2012, CDOC responded, denying the grievance. Docket No. 165-1 at 32. It does not, however, appear that CDOC took the position that plaintiff's grievance was procedurally improper. *Id.* Rather, the response stated, in part, that, although not required, the mailroom would be directed to send the package to the reading committee for review. *Id.* at 32-33. Plaintiff subsequently filed a Step 2 and a Step 3 grievance, as well as additional grievances regarding the handling of his mail in June 2012. Docket No. 237 at 5.

The Prison Litigation Reform Act of 1995 ("PLRA") directs that "[n]o action shall be brought with respect to prison conditions . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *Porter v. Nussle*, 534 U.S. 516, 532 (2002).[5] A remedy is not exhausted if the prisoner fails to follow prison procedures for pursuing administrative remedies. *Woodford v. Ngo*, 548 U.S. 81, 95 (2006). The Supreme Court has interpreted the PLRA as requiring prisoners "to exhaust prison grievance procedures *before filing suit*." *Jones v. Bock*, 549 U.S. 199, 202 (2007) (emphasis added). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Id.* at 211. This requirement

---

[4]The reading committee is a body that reviews inmates' reading material for censorable content. Docket No. 219-2 at 35-36.

[5]The exhaustion requirement is an affirmative defense, which defendant bears the burden of proving. *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Roberts v. Barreras*, 484 F.3d 1236, 1240-41 (10th Cir. 2007). Moreover, exhaustion of administrative remedies under the PLRA is a question of law for the Court to decide. *Drippe v. Tobelinski*, 604 F.3d 778, 781 (3d Cir. 2010).

is consistent with the purpose of the PLRA to "eliminate unwarranted federal-court interference with the administration of prisons" and "'affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'" *Woodford*, 548 U.S. at 93 (quoting *Porter v. Nussle*, 534 U.S. 516, 525 (2002)).

The Tenth Circuit, in an unpublished decision, held that because exhaustion is "a precondition to *filing* a suit, an action brought before administrative remedies are exhausted must be dismissed without regard to concern for judicial efficiency." *Ruppert v. Aragon*, 448 F. App'x 862, 863 (10th Cir. 2012) (unpublished) (emphasis in original). As such, although the prison finished its review of the incident giving rise to the plaintiff's claim by the time plaintiff's case was "ripe for decision," plaintiff's claim was properly dismissed for failure to exhaust administrative remedies. *Id.*; *see also Herrera v. Cty. of Santa Fe.*, 79 F. App'x 422, 424 (10th Cir. 2003) ("Herrera was required under the PLRA to exhaust his administrative remedies before bringing this § 1983 action"). Moreover, an "inmate who begins the grievance process but does not complete it is barred from pursuing a . . . claim under PLRA for failure to exhaust his administrative remedies." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002).

Plaintiff concedes that he did not exhaust his administrative remedies prior to filing this case, arguing instead that (1) there were no administrative remedies available and (2) he was not provided the proper grievance form before the complaint was filed. Docket No. 242 at 12.

As to whether administrative remedies were available to plaintiff, CDOC has

enacted a grievance procedure that inmates are required to use to address a broad range of complaints, including "policies and conditions within the facility," "actions by employees and offenders," and "incidents occurring within the facility." Docket No. 219-5 at 35.[6] The grievance procedure consists of three steps. An inmate must file a Step 1 grievance within 30 days of discovery of the issue or complaint. Docket No. 165-1 at 1, ¶ 5. CDOC must provide a written response within 30 days. If dissatisfied with the response, the inmate must file a Step 2 grievance within five days after receiving the Step 1 response. *Id.* at 2, ¶ 6. CDOC must provide a written response within 30 days. If unsatisfied with the response, the inmate must file a Step 3 grievance within five days after receiving the Step 2 response. *Id.* at 2, ¶ 7. The grievance process does not conclude until plaintiff has completed all three steps. *Id.* at 2, ¶ 8; *see also* Docket No. 219-5 at 38. However, "[t]he grievance procedure may not be used to seek review [of] decisions of the Reading Committee . . . ." Docket No. 219-5 at 34. AR 300-38 states that all "censorable or rejected reading material shall be forwarded to the facility reading committee for evaluation and disposition pursuant to AR 300-26." Docket No. 219-3 at 35. Once the reading committee decides to censor reading materials, an inmate may appeal the decision pursuant to AR 300-26, which is the only administrative review procedure available for decisions of the reading committee. Docket No. 219-2 at 39.

Plaintiff's argument on this issue is somewhat unclear. He appears to contend that CDOC regulations do not allow an inmate to file a grievance regarding the rejection of mail. Docket No. 242 at 14. The Court finds no support for his interpretation of

---

[6]The parties concede that the relevant version of Administrative Regulation 850-04 is set forth in the record at Docket No. 219-5 at 33-41.

CDOC regulations. Moreover, plaintiff filed a grievance complaining of the very conduct giving rise to this claim, namely, defendant's mishandling of his mail in June 2012 and failure to send his mail to the reading committee, which belies his argument that no grievance procedure was available to address defendant's actions. Plaintiff's argument is further undercut by the fact that his July 11, 2012 grievance was not denied on procedural grounds as one might expect it to be if in fact there were no grievance procedures available to challenge defendant's conduct. *See* Docket No. 165-1 at 32. Moreover, plaintiff's focus on the fact that there is only one means of appealing decisions of the reading committee is irrelevant for two reasons. One, there was no decision of the reading committee to grieve at the time plaintiff filed his complaint because the package from Elite had not yet been provided to the reading committee for review. *See* Docket No. 165-1 at 32. Two, plaintiff's claim is against defendant for the mishandling of mail in June 2012, not against the reading committee for improperly censoring plaintiff's mail. Thus, it is not clear what relevance the reading committee has to this case. Plaintiff did not complete all three steps of the grievance process before filing his complaint; thus, he failed to exhaust administrative remedies as to defendant's alleged mishandling of mail in June 2012. *See Jernigan*, 304 F.3d at 1032.

As to whether plaintiff was provided with the proper grievance form, plaintiff asserts that defendant failed to provide him with "an appeal form to try and exhaust administrative remedies until after the complaint was filed." Docket No. 242 at 15. Plaintiff fails to provide sufficient evidence in support of this assertion and, moreover, plaintiff does not attack the Recommendation's conclusion on this issue. As the Recommendation correctly pointed out, the July 1, 2012 communication between

plaintiff and defendant does not demonstrate that defendant failed to provide a grievance form and, contrary to plaintiff's position, plaintiff filed a grievance "within the allowable time period . . . and after he sent the Offender Communication" to defendant. Docket No. 237 at 7. Plaintiff's remaining arguments on this issue are unresponsive to the Recommendation and are therefore rejected. The Court finds no error in this aspect of the Recommendation. To the extent plaintiff's claims are based upon defendant's handling of plaintiff's mail in June 2012, such claims are dismissed.

**C. Denial of Access to Courts Claim**

In its September 30, 2013 order on defendants' motion to dismiss, the Court concluded that plaintiff stated a cognizable denial of access to court claim based upon any post-conviction motion for relief from the Colorado state court conviction and his Florida state court conviction. *See* Docket No. 76 at 8. Plaintiff subsequently filed an amended complaint. Docket No. 89.

With respect to his first denial of access to courts claim, plaintiff alleges that, in June 2012, defendant interfered with his receipt of legal mail, thereby frustrating plaintiff's attempts to initiate post-conviction review proceedings in Florida and Colorado. Docket No. 89 at 15. As the Recommendation correctly recognized, Docket No. 237 at 15 n.6, to the extent plaintiff's access to courts claim is premised on defendant's conduct in June 2012, for the reasons discussed above, plaintiff has failed to exhaust administrative remedies. Defendant is therefore entitled to summary judgment as to plaintiff's claim that defendant's 2012 mishandling of mail denied plaintiff access to the courts. Docket No. 89 at 14-16.

As to defendant's handling of plaintiff's mail in 2010 and plaintiff's denial of

access to courts claim, the Recommendation concluded that plaintiff failed to establish that such conduct frustrated his attempt to re-open his Florida state court criminal case ("Florida case"). Docket No. 237 at 15. Rather than attempt to identify a specific error in the Recommendation's conclusion, plaintiff's objection merely re-asserts the arguments raised in his response to defendant's motion for summary judgment. *Compare* Docket No. 242 at 16-27, *with* Docket No. 197 at 26-28. Plaintiff's objection is therefore largely unresponsive to the Recommendation and insufficient to trigger de novo review. Moreover, plaintiff's argument on this issue is difficult to follow, which is further exacerbated by plaintiff's failure to cite to any documents from the Florida case in support of his argument, a failure which is, by itself, a sufficient reason to overrule plaintiff's objection. *See Adler*, 144 F.3d at 671.

Nonetheless, even if the Court were required to consider the merits of plaintiff's argument, plaintiff fails to identify reversible error. Plaintiff appears to have filed a motion to reopen the Florida case on September 10, 2010. Docket No. 165-11 at 1-3. On September 24, 2012, plaintiff's motion to reopen was dismissed without prejudice because plaintiff's motion was legally insufficient. *Id.* at 13. On November 5, 2012, plaintiff appears to have refiled his motion to reopen the Florida case, styling it as a "Motion for Postconviction Relief." *Id.* at 14. On February 19, 2013, the Florida court denied plaintiff's refiled motion upon consideration of all five issues raised. *Id.* at 32-33. The Florida court ruled that issues 2, 3, and 5 raised arguments that were barred by the plea agreement plaintiff entered into in the Florida case. *Id.* As to issues 1 and 4, where plaintiff asserted that his plea agreement in the Florida case should be set aside,

the Florida court stated that

> [t]here are many reasons why this claim should be denied; the Court will note two. First, his claim is time barred. Assuming his contentions to be totally accurate, this supposed breach occurred in 2004. Nothing was filed in the Court until September 15, 2010. . . . Second, defendant's claim is refuted by the record. In his sworn testimony, defendant specifically testified that the plea was not being entered based upon any threats or promises.

*Id.* Plaintiff contends that the Florida court incorrectly determined that the supposed breach of the plea agreement occurred in 2004. Docket No. 242 at 27. Plaintiff argues that he attempted to explain to the Florida court that he did not discover the violation until 2008, but was impeded from doing so by defendant's mishandling of his mail in 2010. Docket No. 242 at 26-27. Plaintiff does not sufficiently explain why defendant's actions in August 2010 impeded him from making that point to the Florida court. Plaintiff does not identify what document he intended, but was unable, to provide to the Florida court in support of his motion and there is no indication that the Florida court found plaintiff's motion untimely due to some sort of failure of proof. Moreover, even if plaintiff could establish that the 2010 mishandling of mail impeded his ability to argue that his motion to reopen was timely, the Florida court denied plaintiff's motion for an entirely unrelated and equally sufficient reason, namely, because plaintiff's argument that his plea should be set aside was refuted by plaintiff's own testimony in the Florida case. Docket No. 165-11 at 33. Such a deficiency is "logically and practically unrelated" to any impediment allegedly created by defendant's handling of plaintiff's mail in 2010. *See Simkins*, 406 F.3d at 1244. The Court finds that defendant is entitled to summary judgment on this aspect of plaintiff's denial of access to courts claim.

Plaintiff argues that the Recommendation failed to address his denial of access

to courts claim with respect to his Colorado criminal court "post-conviction litigation impediments." Docket No. 242 at 29. However, the Recommendation correctly concluded that, to the extent plaintiff's claim for denial of access to courts is based upon the mishandling of his mail in 2012, as discussed above, his claim is dismissed for failure to exhaust administrative remedies. As to mail mishandling in 2010, plaintiff does not explain how any mail mishandling that occurred in 2010 interfered with his ability to pursue post-conviction remedies as to his Colorado conviction. In his response to defendant's motion for summary judgment, plaintiff alleges that, because defendant rejected a large portion of the package Mr. Heher sent in August 2010, plaintiff was unable to assist in preparing his direct appeal of his Colorado conviction. Docket No. 197 at 19. Plaintiff contends that, as a result, plaintiff's appellate counsel filed a brief that was 290 pages in length and asserted 26 claims of error, which was rejected by the Colorado Court of Appeals for procedural reasons. *Id.* Plaintiff's appellate counsel refiled a brief asserting only 6 claims of error, all of which were denied by the Colorado Court of Appeals. *Id.* Plaintiff's amended complaint does not, however, raise any claim that mail mishandling in 2010 impeded his right to prosecute a direct appeal. *See* Docket No. 89 at 20 (discussing "post conviction 35(c) application in the State of Colorado trial court"); *id.* at 23 (alleging "no ability at all to access the court in Colorado and seek post conviction review"). Rather, as the Court's September 30, 2013 order noted, plaintiff's denial of access to courts claim as to his Colorado conviction alleged an "inability to file post-conviction motions in his Colorado state court case now that the Colorado Court of Appeals has dismissed plaintiff's direct appeal." Docket No. 76 at 5. Plaintiff cannot raise a new claim for denial of access to courts in a

response to defendant's motion for summary judgment. Moreover, even if the Court were to consider plaintiff's newly asserted claim, plaintiff fails to support his claim by citation to evidence. Although plaintiff asserts that, but for defendant's handling of Mr. Heher's package in 2010, he would have been better able to assist counsel in filing his appeal, in the absence of evidentiary support, plaintiff's argument is mere speculation and therefore insufficient to establish a genuine issue for trial. Plaintiff does not otherwise identify evidence of any injury to his ability to file post-conviction motions in his Colorado case resulting from the mishandling of his mail in 2010. Defendant is therefore entitled to summary judgment on this aspect of plaintiff's claim.

**D. Remaining Issues**

Plaintiff argues that the Recommendation's conclusion that defendant is entitled to qualified immunity, Docket No. 237 at 16, is contrary to the Court's September 30, 2013 order, which, in considering the sufficiency of plaintiff's pleadings, held that defendant was not entitled to qualified immunity. Docket No. 76 at 8. Plaintiff is incorrect. The Court previously ruled that, at the motion to dismiss stage, defendant was not entitled to qualified immunity because plaintiff sufficiently alleged that defendant committed a constitutional violation and in so doing violated clearly established law. *Id.* This ruling has no bearing on whether defendant is entitled to qualified immunity at summary judgment, where plaintiff cannot merely rely on the pleadings, but must designate "specific facts showing that there is a genuine issue for trial." *See Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986) Because the Recommendation correctly concluded that plaintiff failed to establish that defendant

violated a constitutional right, plaintiff has failed to establish the first prong of the qualified immunity analysis. *See Buck v. City of Albuquerque,* 549 F.3d 1269, 1277 (10th Cir. 2008). The Court therefore finds no error in this aspect of the Recommendation.

Plaintiff spends a considerable portion of his brief challenging several of the magistrate judge's rulings on discovery matters and case management. Docket No. 242 at 4-9. Plaintiff has not filed objections to any of the orders he identifies and, as a result, has waived his right to do so. To the extent the present filing attempts to assert objections to rulings other than those contained in the Recommendation, his request is also procedurally improper. Moreover, the rulings that plaintiff attacks appear to fall well within the magistrate judge's discretion to manage discovery and the briefing of motions referred to her for disposition or recommendation.

Because the Recommendation was entered on August 28, 2015, plaintiff's objection was originally due on September 14, 2015. On September 8, 2015, plaintiff requested an extension of time until September 30, 2015 to file his objection. Docket No. 240. That same day, the Court granted plaintiff's request in part, directing plaintiff to file his objection by September 18, 2015. Docket No. 241. Plaintiff's objection was filed on September 21, 2015. Although plaintiff's objection was technically untimely, the Court elects in its discretion to consider it timely filed. Plaintiff nonetheless argues that, by failing to grant him the full extension of time he requested, the Court's September 8, 2015 order "stripp[ed] Plaintiff of the ability to fully prepare, copy, and serve his objections." Docket No. 242 at 9. Plaintiff claims that his law library appointment was set for September 14, 2015, which left him just three days after receiving the Court's

September 8, 2015 order in which to prepare his objection. *Id.* at 10. Plaintiff's argument appears premised on the mistaken assumption that he was entitled to an extension of time to file an objection. Upon receipt of the Recommendation, plaintiff was on notice that he had 14 days in which to prepare and file his objection. The Court was not required to grant him any additional time to file an objection; thus, the Court will not overlook any deficiencies in plaintiff's objection simply because the Court did not grant plaintiff's request for an extension of time in its entirety.

Plaintiff also argues that requiring him to file an objection within the time provided was unfair because he is currently busy litigating additional cases and is forced to do so under the constraints imposed by his incarceration. *Id.* at 10. Plaintiff's argument is unpersuasive and does not constitute a sufficient basis for excusing any deficiencies in his objection resulting from such circumstances. Plaintiff obviously found the time to prepare a lengthy objection to the Recommendation.

## II. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the Recommendation of Magistrate Judge [Docket No. 237] is **ACCEPTED**. It is further

**ORDERED** that defendant's Amended Motion for Summary Judgment [Docket No. 165] is **GRANTED**. It is further

**ORDERED** that this case is dismissed in its entirety.

DATED September 30, 2015.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge